35925. DAVIDSON, by Next Friend, *v.* WALTER.

DECIDED FEBRUARY 2, 1956.

 

*Irwin R. Kimzey,* for plaintiff in error.

*Kimzey & Crawford,* contra.

QUILLIAN, J. The plaintiff in error, Zenith Davidson, will be referred to in this opinion as the plaintiff, and the defendant in error, J. E. Walter, as the defendant, the parties having occupied those respective relations in the case in the trial court.

1. The exceptions to the court's ruling as to the sufficiency of pleadings and the admissibility of evidence do not show error. An extended discussion of them is unnecessary since they raise only familiar and well settled rules of pleading and evidence.

2. The question remains as to whether the trial court should have granted a nonsuit. The rule is well established that a non-suit should not be granted if the plaintiff introduces prima facie proof of the case as laid in the petition, whether it sets forth a cause of action or not. *Lowe* v. *News Publishing Co.,* 9 *Ga. App.* 103 (70 S. E. 607) ; *Southern Bauxite Mining &c. Co.* v. *Fuller,* 116 *Ga.* 695 (1) (43 S. E. 64) ; *Bradford* v. *City of Commerce,* 91 *Ga. App.* 581 (86 S. E. 2d 645)·.

The petition in the instant case, however, did set forth a cause of action. The plaintiff's evidence was prima facie proof of every averment of the petition essential to her right of recovery, though no evidence was submitted by her concerning any of the several alleged defamations of her character by the defendant, except the single charge that he accused her in the presence of Dr. Benjamin Scott with the offense of theft or larceny. To falsely and maliciously accuse a person in the hearing of another with an indictable offense constitutes actionable defamation within the meaning of Code § 105-702. Upon the plaintiff submitting prima facie proof that the accusation was made by the defendant in the presence of Dr. Scott, and that it was false, the law imputed malice to its author. Code § 105-706.

Perhaps it should be here observed that the petition alleged in substance, and the proof supported the allegation that the plaintiff did not commit, nor was concerned in the commission of the larceny, to which the defendant referred when making the defamatory accusation against her.

We have considered the defendant's contentions: (a) that in cross-examination the plaintiff made an admission which was tantamount to a retraction of her evidence given on direct examination; (b) that the language attributed to the defendant by the plaintiff's testimony did not, without the aid of innuendo defame the plaintiff's character, and since it could not reasonably have' been so understood by the only person to whom or in whose presence the words were alleged to have been spoken, they were not, according to the plaintiff's own testimony, actionable.

The admission referred to was: "Yes, I testified that Dr. Walter inferred that I was lying when in Dr. Scott's office. Dr. Walter told me that if I wouldn't admit to him that I was stealing, that he would see if the officials couldn't get the truth out of me. No, he didn't say I was a liar. No, he said if I wouldn't tell that I stole the money, that maybe they could get the truth out of me. No, he didn't say I was a liar. No, he didn't say I was a thief either."

On direct examination the plaintiff's testimony in reference to the same matter was: "On the 16th, Dr. Walter told me that if I would not admit I was stealing, that maybe the officers could get the truth from me. He said 'You are lying to me.' He said that when I told him I was not stealing. This conversation that took place in Dr. Scott's presence, I suppose it was the house mother's office, but it's referred to as Dr. Scott's office. Dr. Scott was present. Joel Bearden was present. Dr. Walter was present. And I was present. I met with Sheriff Pardue and Mr. Woody Wilson subsequent to that."

The petition did not allege that the defendant employed either· the word "liar or thief" in accusing the plaintiff of theft and delinquency of lying.

Paragraph ten of the petition quoted in the statement of facts contained the exact ʼwords of which plaintiff's testimony was prima facie proof and it must be observed that her testimony did not materially vary on direct and cross-examination. So the first point does not alter our opinion that the plaintiff proved her case as alleged in the petition.

The familiar rule that one, who by his own testimony given on direct examination proves his case, but makes contradictory statements on cross-examination, cannot recover, has no application

to the facts of this case. Nor does the second point have merit for the reason: First, the words spoken without the aid of innuendo were actionable in that their plain import was understandable by a reasonably intelligent person familiar with the English language. Moreover, it could be said that there was necessity for interpretation of those words in the light of the circumstances in which, according to the plaintiff's testimony they were spoken. Certainly Dr. Scott, a college professor, who the defendant himself testified was conducting an investigation of the alleged theft, was familiar with the facts pertaining to it, and knew that the plaintiff at the very moment the defamatory words were uttered, if her account of the events transpiring on the occasion in question is to be believed, was being interrogated as to whether she had committed the theft.

Distinguished counsel for the defendant earnestly insist that the trial judge was right in granting a nonsuit for the reason that, even if the plaintiff's evidence was sufficient to prima facie prove that the defendant did speak of and concerning her, in the presence of a third person, words that would ordinarily constitute actionable defamation, her evidence revealed that no liability attached for the reason that the communication referred to was privileged. In this connection the defendant contends that the facts disclosed by the plaintiff's testimony furnishing to him immunity from liability for the words attributed to him were that: Previously to the occasion on which the petition alleged and the plaintiff by her testimony undertook to prove the words were spoken, there had been reported a theft of a two-dollar bill committed on the premises of the college, of which the defendant was president, that it was the duty of the defendant as head of the institution to keep informed of the conduct of its students and to regulate their behavior; that it was to the interest of the college and its students that the identity of the thief be ascertained; that the words the plaintiff attributed to the defendant were, if uttered at all, spoken in the course of an investigation of the matter conducted by the school's chaplain, Dr. Benjamin Scott, and attended by the defendant; that whatever he said on the occasion of the investigation was incident to and in the proper discharge of his duty as president of the college.

It is apparent that the privilege relied upon by the defendant,

and which he insists was shown to exist by the plaintiff's own testimony was not a privilege absolute in its nature, but the words thus spoken would, under some circumstances, be a privileged communication. In *Atlanta News Publishing Co.* v. *Medlock*, 123 *Ga.* 714 (3, 4) (51 S. E. 756) it is held: "The characteristic feature of absolute, as distinguished from conditional privilege, is that in the former the question of malice is not open; all inquiry into good faith is closed.

"In every case of conditional privilege, if the privilege is used merely as a cloak for venting private malice, and not bona fide in promotion of the object for which the privilege is granted, the party defamed has a right of action."

The Supreme Court speaking through the scholarly and lamented Associate Justice Hines in a very strong opinion in *McIntosh* v. *Williams*, 160 *Ga.* 461, 464 (128 S. E. 672) said: "Comments upon the acts of a public officer are privileged. Civil Code (1910), § 4436. But such privilege is not absolute. It is conditional. If used as a cloak for venting private malice, and not bona fide in promotion of the object for which the privilege is granted, the party defamed has a cause of action."

The discussion in the *McIntosh* case was confined to the limitations of protection afforded in cases of communications conditionally privileged.

The plaintiff testified in her own behalf to the events leading to and the circumstances under which the defendant, according to her version of the incident, charged her with the indictable offense of theft or larceny. If her account of those events and circumstances were true, they were of such nature as to authorize the inference that the words spoken by the defendant concerning her conduct were not uttered in good faith, but maliciously to vent his private spleen against her. Some of these events were that the defendant had previously interrogated the plaintiff as to her possession of similar property to that which had been stolen, namely a two-dollar bill, and the plaintiff on that occasion assured the defendant that the bill which had been in her possession was not stolen by her, and gave him a thorough and reasonable explanation of how she obtained possession of it; that she produced the person from whom she obtained the bill, who corroborated her explanation.

That the defendant, called as a witness by the plaintiff, denied that he had spoken derogatory words of or in reference to the plaintiff on the occasion under investigation, or that he had criticised her conduct in any manner, cannot be considered in deciding the question as to whether a nonsuit should be granted, for the reasons that the plaintiff was not bound by his testimony, and even if she had, instead of calling him on cross-examination, placed him on the witness stand as her witness, his testimony would have done no more than contradict her. Her testimony would still, if believed by the jury, have furnished prima facie proof of her case as laid in the petition. That the testimony of witnesses of a party to a case conflicts, does not as a matter of law, defeat such party's right of recovery or the validity of his defense.

We are of the opinion that the trial court erred in granting a nonsuit.

*Judgment reversed. Felton, C. J., and Nichols, J., concur.*