## 52695. WILLIAMS v. TRUST COMPANY OF GEORGIA.

WEBB, Judge.

On April 19, 1973 the late Richard H. Rich delivered a speech to some graduate students at Emory University School of Business. The subject of his speech, made from a prepared text, was the organization and operation of a large department store. Although formerly chief executive officer of Rich's, Inc. to which he had devoted most of his business life, Rich, at the time of his speech was semi-retired, serving the corporation as chairman of and consultant to its executive committee. At the close of his prepared remarks, one student inquired, "Tell me about your problems downtown," referring to a strike at Rich's, Inc. department store. Rich responded: "It's not a strike. It's a handful of a few hundred people out of ten thousand, who I think were misled by a man named Hosea Williams, who I think is a charlatan and a drunkard and an extortionist."

Four days after these remarks Williams filed his complaint demanding an oral apology and redress of six million dollars as "damages for his mental pain and suffering." Rich's answer admitted the reference to Williams in substantially the terms alleged, but pleaded that he believed in good faith that the statement was true, that he made the statement in good faith and without malice or intent to cause Williams injury, and that the statement was constitutionally privileged. Substantial discovery was made by depositions and interrogatories, together with affidavit for defendant, after which motion was made on behalf of Rich for summary judgment.[1] From

---

[1] Rich's death occurred on or about May 1, 1975, and the executor of his estate was substituted as party defendant.

the grant of this motion for summary judgment Williams has appealed to this court.

## I. Slander

Georgia law defines slander, or oral defamation, to consist, "first, in imputing to another a crime punishable by law; or, second, charging him with having some contagious disorder, or being guilty of some debasing act which may exclude him from society; or, third, in charges made against another in reference to his trade, office, or profession, calculated to injure him therein; or, fourth, any disparaging words productive of special damage flowing naturally therefrom. In the last case, the special damage is essential to support the action; in the first three, damage is inferred." Code Ann. § 105-702. To be actionable the statement must be both false and malicious. *Mathews v. Atlanta Newspapers,* 116 Ga. App. 337, 340 (157 SE2d 300) (1967). Malice is inferred from the character of the defamation, but its existence may be rebutted by proof, which shall go in mitigation of damages save in the case of privileged communications to which its absence shall be a bar to recovery. Code Ann. § 105-706. Truth may always be proved in justification. Id. § 105-708. Comments upon the acts of public men in their public capacity and with reference thereto is a privileged communication. Id. § 105-709, ¶6.

Beginning in 1964 with its decision in New York Times v. Sullivan, 376 U. S. 254 (84 SC 710, 11 LE2d 686, 95 ALR2d 1412), the Supreme Court of the United States has become increasingly involved in state libel and slander law in its attempt to reconcile state law, as to an individual's right to vindicate in civil courts his good name and reputation, with a competing interest grounded in the constitutional command of the First Amendment.[2] The court held that the First Amendment limits a state's power to award damages in a libel action brought by a public official against critics of his official conduct. This First Amendment protection was conditioned on a lack of actual malice, i.e., knowledge that a statement is false or reckless disregard of whether or not it is false. "The

[2] Related cases to the constitutional rule of privilege granted under the First Amendment, as applied in New

constitutional guarantees [of freedom of speech and press] require . . . a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times, supra, 376 U. S. at 279 (84 SC at 726, 11 LE2d at 706) (1964). That same proscription was extended to "public figures" as well. Curtis Publishing Co. v. Butts, supra, 388 U. S. at 155 (87 SC at 1991, 18 LE2d at 1111) (1967); Greenbelt Cooperative Publishing Assn. v. Bresler, supra, 398 U. S. at 11 (90 SC at 1540, 26 LE2d at 13) (1970).

We agree with the observation of Chief Judge Lawrence in Rosanova v. Playboy Enterprises, Inc. (S.D. Ga., 1976), 411 FSupp. 440, 446 (appeal pending), that this "federalization of state law and the resulting

---

York Times v. Sullivan, supra: Garrison v. Louisiana (1964), 379 U. S. 64 (85 SC 209, 13 LE2d 125); Linn v. United Plant Guard Workers (1966), 383 U. S. 53 (86 SC 657, 15 LE2d 582); Rosenblatt v. Baer (1966), 383 U. S. 75 (86 SC 669, 15 LE2d 597); Time, Inc. v. Hill (1967), 385 U. S. 374 (87 SC 534, 17 LE2d 456); Curtis Publishing Co. v. Butts and its companion Associated Press v. Walker (1967), 388 U. S. 130 (87 SC 1975, 18 LE2d 1094); Beckley Newspapers Corp. v. Hanks (1967), 389 U. S. 81 (88 SC 197, 19 LE2d 248); St. Amant v. Thompson (1968), 390 U. S. 727 (88 SC 1323, 20 LE2d 262); Greenbelt Cooperative Publishing Assn. v. Bresler (1970), 398 U. S. 6 (90 SC 1537, 26 LE2d 6); Time, Inc. v. Pape (1971), 401 U. S. 279 (91 SC 633, 28 LE2d 45); Monitor Patriot Co. v. Roy (1971), 401 U. S. 265 (91 SC 621, 28 LE2d 35); Ocala Star-Banner Company v. Damron (1971), 401 U. S. 295 (91 SC 628, 28 LE2d 57); Rosenbloom v. Metromedia, Inc. (1971), 403 U. S. 29 (91 SC 1811, 29 LE2d 296); Gertz v. Robert Welch, Inc. (1974), 418 U. S. 323 (94 SC 2997, 41 LE2d 789); and Time, Inc. v. Firestone (1976), 424 U. S. 448 (96 SC 958, 959, 47 LE2d 154) (which reiterates the immunity principle but holds it inapplicable because complainant was not a "public figure").

restriction on recovery for libel requires major adjustments in the law of defamation as codified and interpreted in Georgia in relation to press, periodicals and broadcasting. Common law libel [and slander] wears a very different aspect in the light of latter day constitutional doctrine." Defamed public officials and public figures can recover only upon a showing of actual malice, i.e., "only on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth." States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth. Gertz v. Robert Welch, Inc., supra, 418 U. S. at 342, 349 (94 SC at 3008, 3011, 41 LE2d at 807).

## II. Public Figure

One may attain the status of "public figure" by position alone, or by commanding a substantial amount of public interest. Or, as was said of Edwin A. Walker, who had pursued a long and honorable career in the United States Army before resigning to engage in political activity, he may attain the status of "public figure" by "his purposeful activity amounting to a thrusting of his personality into the 'vortex' of an important public controversy. . ." Associated Press v. Walker, supra, 388 U. S. at 155 (87 SC at 1991, 18 LE2d at 1111).

"Those who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention, are properly classed as public figures . . ." Further, "[t]hat designation [public figure] may rest on either of two alternative bases. In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. In either case such persons assume special prominence in the resolution of public questions." Gertz v. Robert Welch, Inc., supra, 418 U. S. at 342, 351 (94 SC at 3008, 3013, 41 LE2d at 807).

" 'Public figures,' within the contemplation of the rule in *New York Times* [376 U.S. 254, supra], as enlarged

by subsequent cases, are 'those persons who, though not public officials, are "involved in issues in which the public has a justified and important interest" ' and ' "include artists, athletes, business people, dilettantes, anyone who is famous or infamous because of who he is or what he has done." ' Cepeda v. Cowles Magazines and Broadcasting, Inc. (9th Cir. 1968) 392 F2d 417, 419, cert. denied 393 U.S. 840, 89 SC 117, 21 LE2d 110. Consonant with this definition, a college athletic director, a basketball coach, a professional boxer and a professional baseball player, among others, have all been held to be 'public figures.' " Time, Inc. v. Johnston (CA 4, 1971), 448 F2d 378, 380 (1) (professional basketball player). The term has been applied also to one who injected himself into an election campaign of a small foreign country. Time, Inc. v. McLaney (CA 5, 1969) 406 F2d 565, 573, cert. den. 395 U. S. 922 (89 SC 1776, 23 LE2d 239) (1969). But the Supreme Court held that the wife of a scion of a wealthy industrial family who may have held a few press conferences during divorce proceedings in an attempt to satisfy inquiring reporters was not a "public figure." Time, Inc. v. Firestone, supra, 424 U. S. at 455 (96 SC at 965, 47 LE2d at 163).

"[I]t is for the trial judge in the first instance to determine whether proofs show [plaintiff] to be a 'public official.' " Rosenblatt v. Baer, supra, 383 U. S. at 88 (86 SC at 677, 15 LE2d at 606). Likewise, "[a]lthough the issue of whether a plaintiff in a defamation action is a public figure poses a mixed question of law and fact, it is nevertheless one for the Court, not the jury, to determine." Hotchner v. Castillo-Puche, 404 FSupp. 1041, 1045 (5) (1975); Rosanova v. Playboy Enterprises, Inc., supra, 411 FSupp. at 444. In Montandon v. Triangle Publications, Inc., 45 Cal. App. 3d 938 (120 Cal. Rptr. 186) cert. den., 423 U.S. 893 (96 SC 193, 46 LE2d 126)(1975), the Court held an author who made promotional appearances on radio and television to be "a public figure," finding it unnecessary to detail the evidence which supported this conclusion. That court adopted the definition of a public figure pronounced, and heretofore quoted in Cepeda v. Cowles Magazines & Broadcasting, Inc., supra, 392 F2d at 419. See also Dacey v. Florida Bar,

Inc., 427 F2d 1292, 1295 (CA 5, 1970).

In this case Hosea Williams' own testimony by deposition shows that he received widespread publicity[3] for his civil rights and labor activities, for several arrests, and for his participation in politics and efforts to be elected to public office[4]; that he at one time had his own radio program, had held many press conferences and made numerous public appearances; that he led well-publicized demonstrations and took his cause to the people to ask "the public's support"; and that he was outspoken on subjects of public interest. Said he, "[N]ow, people in the community being arrested every day, they don't even mention it. And some of them are quite public figures. But Hosea Williams gets arrested for something, even if I get arrested for a traffic ticket, it makes like front page news." And "in the case of Rich's, it was pickets, leaflets and press conferences and also a mule train march."

We conclude, therefore, that Williams, whether deemed a dissident of notoriety or considered a champion for civil rights, in his own right was at the time of the questionable remarks, and is now, a "public figure." Indeed, his counsel on oral argument in this court conceded, in response to questions from the bench, that Williams was properly termed a "public figure."

### III. Malice

The basic rule denying full protection of the state libel laws, because limited by the First Amendment (as adapted by the Due Process Clause of the Fourteenth Amendment), was set forth in New York Times v. Sullivan, supra, 376 U.S. at 280. Under the fundamental

---

[3] An uncontroverted affidavit on behalf of movant lists for the period from August 16, 1961 through April 20, 1973 some 388 news articles and editorials in the Atlanta Journal, Atlanta Constitution, Savannah Morning News, Savannah Evening Press, Columbus Enquirer, and Columbus Ledger.

[4] He sought political office on five different occasions, and was elected to the Georgia House of Representatives in 1974.

standard there enunciated, a public official might be allowed the civil remedy of recovery of damages for slander or libel only if he establishes that the utterance was false *and* made with actual malice, that is, "with knowledge of its falsity or in reckless disregard of whether it was false or true." Rosenblatt v. Baer, supra, 383 U.S. at 84 (86 SC at 675, 15 LE2d at 604). And it is no different whether the complainant be a "public official" or a "public figure." Greenbelt Cooperative Publishing Assn. v. Bresler, supra, 398 U. S. at 11 (90 SC at 1546, 26 LE2d at 13).

In a rather complete statement on the "reckless disregard" element of actual malice, the Supreme Court in St. Amant v. Thompson, supra, 390 U. S. at 730, 731 (88 SC at 1325, 20 LE2d at 267), explained: " 'Reckless disregard,' it is true, cannot be fully encompassed in one infallible definition. Inevitably its outer limits will be marked out through case-by-case adjudication, as is true with so many legal standards for judging concrete cases, whether the standard is provided by the Constitution, statutes or case law. Our cases, however, have furnished meaningful guidance for the further definition of a reckless publication. In *New York Times, supra,* the plaintiff did not satisfy his burden because the record failed to show that the publisher was aware of the likelihood that he was circulating false information. In *Garrison v. Louisiana,* 379 U. S. 64 (1964) [supra], also decided before the decision of the Louisiana Supreme Court in this case, the opinion emphasized the necessity for a showing that a false publication was made with a 'high degree of awareness of . . . probable falsity.' . . . These cases are clear that reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. *There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.* Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice." (Emphasis supplied.) Also, "[f]ailure to investigate does not in itself establish bad faith." Id., 390 U. S. at 733 (88 SC at 1326, 20 LE2d at 268).

Malice in the constitutional sense is distinguished

from the common law sense of ill will, hatred, or "charges calculated to injure." The unanimous holding of the Supreme Court in Garrison, supra, 379 U. S. at 73 (85 SC at 215, 13 LE2d at 132), was that the First Amendment rights are not defeated because of wrongful or even malicious motives; speech is protected "even if he did speak out of hatred." Further, the Court in Greenbelt, supra, 398 U. S. at 10 (90 SC at 1539, 1540, 26 LE2d at 12, 13), held: "The judge then defined 'malice' to include 'spite, hostility or deliberate intention to harm.' Moreover, he instructed the jury that 'malice' could be found from the 'language' of the publication itself. Thus the jury was permitted to find liability merely on the basis of a combination of falsehood and general hostility. *This was error of constitutional magnitude, as our own decisions have made clear.*" (Emphasis supplied.)

Constitutional malice does not involve the motives of the speaker or publisher, though they may be wrong, but rather it is his awareness of actual or probable falsity, or his reckless disregard for their falsity. Accordingly, those decisions which deal only with malice in the sense of ill will and charges "calculated to injure," such as *McIntosh v. Williams,* 160 Ga. 461 (128 SE 672) (1925); *Ransone v. Christian,* 56 Ga. 351 (1876); *DeLoach v. Maurer,* 130 Ga. App. 824 (204 SE2d 776) (1974); and *Davidson v. Walter,* 93 Ga. App. 290 (91 SE2d 520) (1956), relied upon by Williams, are inapposite.

So here Williams, as was with Sullivan in New York Times, is prohibited "from recovering damages for a defamatory falsehood relating to his . . . conduct *unless* he proves that the statement was made with 'actual malice' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times, supra, 376 U. S. at 279. (Emphasis supplied.) Actual malice is not presumed, " 'but is a matter of proof by the plaintiff.' " Id., at 284. The constitutional standard demands that the proof of actual malice be made with convincing clarity. Id. at 284.

### IV. Summary Judgment

This court adheres to the view that one who moves for summary judgment has the burden of demonstrating that there is no genuine issue of material fact, and any doubt as

to the existence of such an issue is to be resolved against the movant.[5] Although it is an "extreme remedy to be granted only in those cases where there clearly is no genuine issue to be tried . . . its extreme nature does not lighten the burden of a party against whom a motion therefor is interposed." Cervantes v. Time, Inc., 464 F2d 986, 993 (CA 8, 1972), cert. den. 409 U. S. 1125 (93 SC 939, 35 LE2d 257) (1973). Federal Rules of Civil Procedure Rule 56 (e), 28 USCA, which is the same as Rule 56 (e) (Code Ann. § 81A-156 (e)) of Georgia's Civil Practice Act, supplies the other side: "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." This aspect of the rule was followed in the First Amendment defamation cases of Cervantes, supra, and Hurley v. Northwest Publications, Inc., 398 F2d 346 (CA 8, 1968), and is in accord with constructions in Adickes v. S. H. Kress & Co., 398 U. S. 144, 153 (90 SC 1598, 26 LE2d 142) (1970) and First Nat. Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288 (88 SC 1575, 20 LE2d 569) (1968). It is the duty of each party at the hearing on a motion for summary judgment to present his case in full. Summer-Minter & Associates v. Giordano, 231 Ga. 601, 604 (203 SE2d 173) (1974); Strickland v. C. & S. Nat. Bank, 137 Ga. App. 538, 540 (224 SE2d 504) (1976).

"Where . . . it is plain that the record has been fully developed by depositions and affidavits on a motion for summary judgment, and such record demonstrates that, construing all of the facts and inferences to be drawn therefrom in favor of the party against whom the judgment is entered, he would not be entitled to have a jury verdict stand, we have not hesitated to hold that the

---

[5] United States v. Diebold, Inc., 369 U. S. 654 (82 SC 993, 8 LE2d 176) (1962); Candler General Hospital v. Purvis, 123 Ga. App. 334 (181 SE2d 77) (1971).

grant of summary judgment is proper." Time, Inc. v. McLaney, supra, 406 F2d at 571.

There are many decisions that summary judgment procedures have been determined to be particularly appropriate in defamation actions where the First Amendment is applicable. Bon Air Hotel, Inc. v. Time, Inc., 426 F2d 858, 865 (CA 5, 1970)[6]; Time, Inc. v. McLaney, supra, 406 F2d 565, 572; Walker v. Pulitzer Publishing Co., 394 F2d 800 (CA 8, 1968); Hurley v. Northwest Publications, Inc., supra; Washington Post Co. v. Keogh, 365 F2d 965, 968 (CA, D.C. 1966), cert. den. 385 U.S. 1011 (87 SC 708, 17 LE2d 548). And "actual malice" under the New York Times case, supra, 376 U. S. 254, was made "a constitutional issue to be decided initially by the trial judge vis-a-vis motions for summary judgment and directed verdict. . . 'applying the *Times* test of actual knowledge or reckless disregard of the truth. Cf. Jackson v. Denno, 378 U.S. 368 (84 SC 1774, 12 LE2d 908) (1964). Unless the court finds, on the basis of pre-trial affidavits, depositions or other documentary evidence, that the plaintiff can prove actual malice in the *Times* sense, it should grant summary judgment for the defendant . . .' " Bon-Air Hotel, Inc. v. Times, Inc., supra, 426 F2d at 864.

The question of malice turns upon the speaker's awareness of falsity or a reckless disregard for the truth. The speaker's motives, though malicious in the statutory or common law sense[7]; what a reasonable man in the same circumstances may have said[8]; and the lack of or inadequacy of prior investigation[9]; all are inapplicable to the question of actual malice in the constitutional sense as to defamation of a public figure. In St. Amant v. Thompson, supra, 390 U. S. at 730, the Supreme Court held: "[Defendant] had no personal knowledge of [plaintiff's] activities; he relied solely on [an informant's] affidavit although the record was silent as to [the

---

[6] See footnote to Bon Air, p. 865.

[7] Garrison v. Louisiana, supra, 379 U.S. at 74.

[8] St. Amant v. Thompson, supra, 390 U.S. at 731.

[9] Beckley Newspapers Corp. v. Hanks, supra, 389 U.S. at 84-85.

informant's] reputation for veracity; he failed to verify the information with those in the union office who might have known the facts; he gave no consideration to whether or not the statements defamed [plaintiff] and went ahead heedless of the consequences . . . These considerations fall short of proving [defendant's] reckless disregard for the accuracy of his statements about [plaintiff]." Thus, a public figure might be allowed a civil remedy for a statement about him only if the speaker knew his statement was false, or entertained serious doubts as to whether it was true or false.[10]

It having been determined and conceded that Williams is a "public figure," Rich was clearly entitled to invoke the immunity rule of New York Times and related cases.

That being true, " 'summary judgment, rather than trial on the merits, is a proper vehicle for affording constitutional protection,' where there is no substantive basis for a finding of 'knowing falsity or reckless disregard.' " Time, Inc. v. Johnston, 448 F2d 378, 383 (CA 4, 1971); Bon Air Hotel, Inc. v. Time, Inc., supra, 426 F2d at 865; Washington Post Co. v. Keogh, supra, 365 F2d at 967-968.

Let us, therefore, in the words of a well-known public official of a former generation, "look at the record," viewing it and the inferences which might be drawn therefrom in the light most favorable to Williams. Does the record, established by the depositions, answers to interrogatories, and affidavit, demonstrate that there is no issue of a material fact from which a jury could find "actual malice?" Time v. McLaney, supra, 406 F2d at 567. See Rule 56 (c), Civil Practice Act, Code Ann. § 81A-156 (c); Haber v. Ga. Power Co., 127 Ga. App. 19 (192 SE2d 436) (1972).

At the outset, Rich swore that when he made the allegedly defamatory statement he did not know it was false and had no awareness of probable falsity.

---

[10] Supra, p. 12; New York Times v. Sullivan, supra, 376 U. S. at 279-280; St. Amant v. Thompson, supra, 390 U. S. at 731.

Admittedly, a defendant in a defamation action cannot automatically escape liability by swearing that the statements were made with a belief that they were true. Hotchner v. Castillo-Puche, supra, 404 F2d at 1049; St. Amant v. Thompson, supra, 390 U. S. at 732. And equally true, one sued for allegedly slanderous or libelous remarks is hardly likely to admit malice. *Montgomery v. Pacific &c. Co.*, 131 Ga. App. 712, 716 (10) (206 SE2d 631) (1971).

Nevertheless, knowledge of the falsity of the statement, a reckless disregard of whether it was false or true, or a serious doubt as to its truth, is imperative to proof of malice in the constitutional sense as to statements within the Fifth Amendment immunity. Indicative of the absolute lack of any such constitutional malice on the part of Rich was his testimony as to the foundation for his expressed thoughts about Williams. Rich testified that he based his belief that Williams was a "charlatan," or one "who postures and poses as a sort of individual that he isn't," upon his knowledge that Williams held himself out to be a "reverend" although he had been told that Williams had never been officially ordained. Williams acknowledged that he had never been ordained, had no degree in theology, and that he called himself "reverend" in the belief that he was so entitled because of some sort of "licensing" ceremony.

Rich testified that he believed Williams to be a drunkard because he had read newspaper accounts about arrests of Williams for drunken driving and because he had heard from several sources that Williams was a heavy drinker. Williams acknowledged his arrests for drunken driving, and that those arrests made front page news. By his testimony Williams thus concedes there was some basis for Rich's belief that he was a drunkard. Williams argues, however, that he was not arrested in Savannah for drunken driving, as Rich recalled, but in Decatur. This conflict in testimony is insufficient to raise a controlling issue of fact as to malice and knowledge of falsity or reckless disregard for truth. Basic to the issue is that Williams had been arrested for drunken driving, that the arrests had been publicized in the newspapers, which Williams acknowledged, and that Rich, having seen that

publicity, formed the opinion that Williams was a drunkard.

Rich, in the statement out of which this action arose, had said "I think [Williams] is . . . an extortionist." Rich testified that he believed Williams an extortionist because Williams as a spokesman for striking employees[11] made a number of demands totally unrelated to employment conditions, including:

(1) That Rich's, Inc. deposit at least a million dollars in black-owned banks;

(2) That Rich's, Inc. locate stores in black neighborhoods;

(3) That Rich's Inc. use black-oriented media for advertising; and

(4) That Rich's, Inc. make annual contributions to such organizations as the Southern Christian Leadership Conference, of which Williams was president.

Williams sought to enforce these demands through economic coercion, by leading a strike, a group boycott, picketing and other demonstrations. Rich's definition of an extortionist was "forcing someone to do something against their will through threat and making them suffer if they don't."

Williams established by his own testimony that he had been portrayed by the Atlanta press as an extortionist, and conceded that the publicity, though considered by him to be unfair, could have resulted in some people forming an opinion that he was an extortionist. About an editorial in the Atlanta Constitution of October 5, 1972, which quoted former Mayor Sam Massell as stating that Williams' demands "border on extortion," Williams testified:

Q. "But what I was asking you: Would this article to a person who read it, have implied that somebody thought you were guilty of extortion?" A. "Could be. You know, just like I say, it could be." Q. "That is all I want. I'm just showing, if I may, that the news media has published things, regardless of who said

___

[11] Williams himself was not an employee of Rich's, Inc.

them, they did characterize you in this fashion." A. "But, see, where the point is — but the statement I would like to make, it's according to who was reading the paper. If some racist read it, yes, but on the other hand, no." Q. "I understand your answer. But my question was: Did the news media hold you out in the manner in which I have asked you — which I have stated?" A. "In the mind of the public as an extortioner?" Q. "Yes." A. "And I said, on the one hand, yes. On the other hand, no. I can't get away from saying both."

The foregoing testimony was not contradicted or challenged, and demonstrates that Rich believed his statement to be true, did not know it to be false, entertained no serious doubts that it might be false, and had a substantial and evident basis for his belief.[12] At this plateau, however, it is not a question of the *truth* of the alleged falsehood. The defamatory statement may be false but it is still not actionable unless it was uttered with knowledge of its falsity or in reckless disregard for the truth. "Truth or falsity . . . is not the constitutional test; the statements must be published with actual knowledge of their falsity or with reckless disregard for their falsity." Bon Air Hotel v. Time, supra, 426 F2d at 867. "Even if the story is indeed false, [plaintiff] must meet that standard." Mistrot v. True Detective Publishing Corp., 467 F2d 122, 124 (CA 5, 1972).

The depositions, answers to interrogatories and affidavit portray an absence of malice in the constitutional sense. Pursuant to § 33 of the Georgia Civil Practice Act (Code Ann. § 81A-133), defendant Rich, tracing the language of New York Times, supra, asked Williams if he contended "that the allegedly defamatory statement was made with actual knowledge of its falsity?" and if so, to identify each witness he expected to call to testify in support thereof, how the testimony would support his contention that the statement was made with knowledge of its falsity; and to identify and give the location of each and every piece of documentary evidence, or any other evidence, that he intended to submit in

---

[12] Cervantes v. Time, Inc., supra, 464 F2d at 994.

support of his contention that the statement was made with knowledge of its falsity. An identical interrogatory sought the same information with respect to any evidence which would be offered to support a contention that the statement "was made with reckless disregard as to whether it was true or false."

To each interrogatory Williams gave precisely the same response: "At this time plaintiff does not know and therefore cannot contend why or how this statement was made." Thus, Williams not only failed to produce any conflicting evidence on the issue of constitutional malice, but he admitted that he had none.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. Code Ann. § 81A-156. A public figure is prohibited from recovering damages for a defamatory falsehood unless he proves that the statement was made with actual malice.[13] There having been clearly shown a want of actual malice, the pleadings of Williams were pierced and the lack of a right of recovery was disclosed. Williams filed no counter-affidavit or other evidence showing malice and in the absence thereof summary judgment was justified. *Richards v. Tolbert,* 232 Ga. 678, 679 (208 SE2d 486) (1974); *Brown v. J. C. Penney Co.,* 123 Ga. App. 233, 235 (180 SE2d 364) (1971); Time, Inc. v. McLaney, supra, 406 F2d at 573; Cervantes v. Time, Inc., supra, 464 F2d at 994.

Although Williams relies heavily upon *Prairieland Broadcasters of Ga. v. Thompson,* 135 Ga. App. 73 (217 SE2d 296) (1975), there, as also in *Fuqua Television, Inc. v. Fleming,* 134 Ga. App. 731 (215 SE2d 694) (1975) and in *DeLoach v. Maurer,* 130 Ga. App. 824, supra, movants for summary judgment did not, as the movant did here, make a prima facie showing that there did not exist actual malice in the constitutional sense. Once shown, the

---

[13] Supra, 5; New York Times v. Sullivan, supra, 376 U. S. 254; Greenbelt Cooperative Publishing Assn. v. Bresler, supra, 398 U. S. 6.

burden was cast upon Williams to come forward with proof that the statements were made with knowledge that they were false or with reckless disregard of whether they were false or not. Having failed in this duty of rebuttal, summary judgment was proper. CPA § 56 (e) (Code Ann. § 81A-156 (c)); *Stephens County v. Gaines,* 128 Ga. App. 661 (197 SE2d 424) (1973); *Sasser & Co. v. Griffin,* 133 Ga. App. 83, 85 (210 SE2d 34) (1974).

Moreover, Williams admitted "that he does not know and therefore cannot contend why or how this statement was made." "The elemental principle should be noted at the outset that once a party in the position of a defendant who is a movant for summary judgment pierces the pleadings of one in the position of a plaintiff and shows to the court that one essential element under any theory of recovery is lacking and incapable of proof, the defendant is entitled to summary judgment as a matter of law irrespective of any issues of fact with regard to other essential elements." *Waldrep v. Goodwin,* 230 Ga. 1, 2 (1) (195 SE2d 432) (1973); *First of Ga. Ins. Co. v. Josey,* 129 Ga. App. 14, 16 (198 SE2d 381) (1973).

The motion for summary judgment was properly granted.

*Judgment affirmed. Deen, P. J., and Quillian, J., concur.*

ARGUED SEPTEMBER 15, 1976 — DECIDED OCTOBER 4, 1976 — REHEARING DENIED OCTOBER 20, 1976 —

*Al Horn, Bensonetta Tipton,* for appellant.
*King & Spalding, Kirk McAlpin, C. David Vaughan,* for appellee.