**J.F. STRAW, d/b/a Business Opportunities Digest, Plaintiff-Appellee,**

v.

**CHASE REVEL, INC., d/b/a Entrepreneur Magazine, Defendant-Appellant.**

No. 86–8524.

United States Court of Appeals, Eleventh Circuit.

March 27, 1987.

Roy E. Barnes, Jerry A. Landers, Jr., Marietta, Ga., for defendant-appellant.

Adele P. Grubbs, Marietta, Ga., for plaintiff-appellee.

Before HILL and HATCHETT, Circuit Judges, and HENDERSON, Senior Circuit Judge.

HILL, Circuit Judge:

Appellee J.F. Straw publishes a magazine known as the Business Opportunities Digest. The publication serves as a clearing house to put people interested in potential investment opportunities in touch with one another. The magazine also contains small commentaries written by Straw. One such commentary, which appeared in the August 1982 issue, warned that a rival enterprise, American Entrepreneur Association, ("AEA") was in bankruptcy.[1]

AEA, founded by appellant Chase Revel, also published a magazine containing business opportunities. After Straw's comment appeared, appellant Chase Revel published an editorial in his own magazine, *Entrepreneur Magazine,* which read:

### Caveat Emptor

When we started *Entrepreneur Magazine* about 10 years ago, practically nothing existed in our field. Now there are hundreds of publications. However, most offer very little help to anyone. The majority don't have any value and go out of business very quickly. A few steal our material, but our attorneys stop them.

However, one has somehow survived even though it offers the least of any business publication. It's called *Business Opportunity Digest* and is publish-

---

1. The editorial, in its entirety read:

Over the past month I have received a number of solicitations to participate in the multi-level marketing program of the American Entrepreneurs' Association. To those of you who sent me those solicitations and to any of you who may be considering entering that plan, they are in bankruptcy. In early April, Chase Revel, the founder of American Enterpren-

eurs' Association, declared his company bankrupt and supposedly began firing those management people who he claimed were responsible.

Whether Revel is personally responsible or not, the company is in bankruptcy proceedings. Therefore, you're taking a substantial risk by dealing with them. A word to the wise is sufficient.

ed in some town in Tennessee by a man of unknown credentials: Mr. J.F. Straw.

It appears he subscribes to various city newspapers and extracts his 'opportunities' from their classified sections or accepts payment from people to editorialize their business opportunities. Either way, you would be much further ahead to read the classified business opportunities in your newspaper yourself. Especially for the price difference. Straw charges $36 for 12 four-page issues. Buyer beware.

After being notified about this article, Mr. Straw contacted Ron Smith, the editor under whose name the editorial appeared. He requested a retraction. When this was not forthcoming he brought suit. The case was removed to federal court, and originally dismissed for lack of jurisdiction over the defendants. The district court eventually reconsidered its motion to dismiss and ultimately granted only the motion of defendant Ron Smith to dismiss for lack of personal jurisdiction. The court determined that the magazine itself had sufficient minimum contacts with the State of Georgia to allow it to be sued there. The case then went to trial, where the jury awarded Mr. Straw $25,000 in compensatory damages and $100,000 in punitive damages.

## I. PERSONAL JURISDICTION

■ On appeal Chase Revel reasserts his jurisdictional challenge. When the district court originally dismissed the case for lack of jurisdiction, it did not have at its disposal facts about the defendant magazine which it ultimately found met the standard of minimum contacts under *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). Appellant does not offer anything on appeal which disputes the district court's final factual findings. The court found that *Entrepreneur Magazine* had made deliberate purposeful attempts to establish business contacts in Georgia; received advertising revenues from companies within the state; and had a

not insignificant percentage of its circulation directed at Georgia. Given these facts, Revel had sufficient contacts with Georgia to support the district court's exercise of personal jurisdiction.

## II. SUFFICIENCY OF THE EVIDENCE

Revel next asserts that the jury's verdict was not supported by the evidence. First, he argues that Mr. Straw never showed that the magazine or its editor was negligent in publishing the offensive editorial. Appellant claims that Mr. Straw's testimony was "replete with references to the fact that the article was published ... [but] there was absolutely no evidence which would tend to demonstrate the standard of care applicable to the facts of this case." He does not cite to the record nor to any case law in support of this proposition.

■ The testimony given at trial was sufficient to demonstrate that the appellant was at least negligent. Mr. Ron Gershen, who also publishes a financial information newsletter, testified that he always checks out the sources of financial ads appearing in his newsletter. Testimony by Ron Smith, the editor over whose name the article appeared, indicated that he failed to verify any of the contents of the article disparaging Mr. Straw. Instead, Mr. Smith maintained that the article was handed to him in completed form by Revel, and that the piece was an editorial opinion, not subject to factual verification. This argument is not persuasive; the editorial reads like a recitation of fact, not a pure opinion. The jury was entitled to find that Mr. Smith's failure to verify the assertions contained in it amounted to a failure to exercise that degree of care exercised under the same or similar circumstances by ordinarily prudent persons, and that this negligence was imputable to Mr. Revel. *See* O.C.G.A. § 51–1–2 (1982).

Appellant also contends that Straw never showed that the statements in the article were false. This assertion is similarly unelaborated by explanation, citations to the record, or citations to applicable authority, except to reference 28 pages of testimony

by Ron Smith. He also claims that Mr. Straw did not demonstrate any evidence of damages, only that he was "mad and upset." Appellant alleges that evidence at trial demonstrated that the circulation of Straw's magazine has increased 400 per cent since the alleged libel, proving that he was not damaged.

■ An examination of the record shows that Mr. Straw denied ever having stolen any articles or information from *Entrepreneur Magazine.* He also denied the accusation that he culls his information from the classified ads in other newspapers. Moreover, he denied that people pay him to editorialize their business opportunities. This testimony contradicts those things reported as facts in the challenged editorial. The jury could therefore conclude that the article was false and defamatory.

■ Under Georgia law the measure for compensatory damages in an action for defamation is left to the enlightened conscience of the jury. *Franklin v. Evans,* 55 Ga.App. 177, 189 S.E. 722 (1937); *Williamson v. Lucas,* 171 Ga.App. 695, 320 S.E.2d 800 (1984). The relatively slow-paced growth of Mr. Straw's company, coupled with Mr. Straw's own testimony that he suffered ridicule from some of his colleagues, adequately shows that his reputation was damaged.

A new trial may not be granted unless the trial judge concludes that the jury's verdict is against the great weight of the evidence. *J & H Auto Trim Co. v. Bellefonte Insurance Co.,* 677 F.2d 1365, 1368 (11th Cir.1982). After studying the record we find no reason to overturn the court's decision to deny a new trial. On all of the above issues, the evidence sufficiently supported the jury's verdict.

## III. PRIVILEGE

■ Next appellant alleges that the editorial by Mr. Smith was privileged under Georgia law, and not subject to a defamation suit. He cites no case law in support of this proposition. The specific areas in which such a privilege operates are enumerated in O.C.G.A. § 51–5–7.[2] None of these enumerated circumstances are even remotely applicable, and the district court properly refused the instruction.

## IV. PRIVATE OR PUBLIC FIGURE

Under *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), a public figure cannot prevail in an action for media libel unless he can prove actual malice. A private figure can obtain compensatory damages absent a showing of actual malice. *Gertz v. Robert Welch,* 418 U.S. 323, 347, 94 S.Ct. 2997, 3010, 41 L.Ed.2d 789 (1974).[3] Here appellant asserts that Mr. Straw was a public figure and that he did not make the requisite showing of actual malice.

In the *Gertz* case the Supreme Court said:

[A person's] designation [as a public figure] may rest on either of two alternative bases. In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby be-

---

2. O.C.G.A. § 51–5–7 states:
   The following communications are deemed privileged:
   (1) Statements made in good faith in the performance of a public duty;
   (2) Statements made in good faith in the performance of a legal or moral private duty;
   (3) Statements made with a good faith intent on the part of the speaker or to protect his interest in a matter in which it is concerned;
   (4) Fair and honest reports of the proceedings of legislative or judicial bodies;
   (5) Fair and honest reports of court proceedings;

   (6) Comments of counsel fairly made on the circumstance of a case in which he is involved and on the conduct of the parties in connection therewith;
   (7) Truthful reports of information received from any arresting officer or police authority;
   (8) Comments upon the acts of public men in their public capacity and with reference thereto.

3. The term "actual malice" will be defined and dealt with further in the next portion of this opinion.

comes a public figure for a limited range of issues. In either case such persons assume special prominence in the resolution of public questions.

*Id.*, 418 U.S. at 351, 94 S.Ct. at 3012. The Court went on to hold that although the particular individual in that case was "well known in some circles, he had achieved no general fame or notoriety in the community." Nor did he "thrust himself into the vortex" of a particular public controversy. He was therefore a private figure. *Id.*, 418 U.S. at 352, 94 S.Ct. at 3013.

Appellant concedes that Mr. Straw does not have any general notoriety.[4] However, he asserts that Mr. Straw is a "public figure" in the business community by virtue of his being the publisher of a business newsletter.

■ We conclude that Mr. Straw is much more like the petitioner in *Gertz*. He is well known in some circles, and publishes in a particular field; but not every publisher is automatically a public figure by virtue of his access to a printing press. At the time that the offensive editorial appeared, Mr. Straw's magazine had a limited circulation of 750 among a small sector of the business community. This does not make him a public figure in the general sense. Nor can it be said that Mr. Straw injected himself into a public controversy by truthfully reporting that AEA had filed for bankruptcy.[5] The district court did not err

in concluding that Mr. Straw was a private figure, and instructing the jury that he could recover compensatory damages for any harm caused by the negligent publication of statements found to be defamatory. Thus, the jury's award of $25,000 in compensatory damages must stand.

## V. PUNITIVE DAMAGES

Finally, appellant contends that the judge's instructions regarding punitive damages were erroneous. He claims that the court failed to explain the connection between actual malice and punitive damages, and that this violated the punitive damage rule set down by the Supreme Court in *Gertz*.

■ In addition to promulgating the public/private figure distinction, in *Gertz* the Supreme Court held that punitive or presumed damages may not be awarded in a defamation case unless the plaintiff can show that the defendant acted with actual malice. Actual malice is defined to mean that the defendant either knew the allegedly defamatory material was false, or published it with a reckless disregard of whether it was false or not. *Gertz*, 418 U.S. at 349, 94 S.Ct. at 3011. In other words, although a private figure can recover compensatory damages upon a showing of simple fault or negligence,[6] to recover punitive damages the aggrieved party must

4. At oral argument counsel for appellant conceded that Mr. Straw was a private figure, but asserted that recent Supreme Court precedent indicated that the speech "on a matter of public concern" automatically became entitled to *New York Times* protection, citing *Philadelphia Newspapers, Inc. v. Hepps*, — U.S. —, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986). We find that counsel's argument is based on a misreading of that case. In fact, the Court's opinion reaffirms the notion that a private figure need not meet the stringent requirements of *New York Times* in order to obtain compensatory damages, even where the defendant's allegedly defamatory speech *is* "of public concern." *Philadelphia Newspapers*, 106 S.Ct. at 1563. The "public concern" issue does not enter the public/private figure equation. A private figure need show actual malice only to obtain a punitive damage award, as discussed *infra*.

5. At trial and at oral argument, counsel for the appellant attempted to demonstrate that Straw's

editorial was false because AEA was in a Chapter 11 reorganization and not a "straight" bankruptcy. The district court found no merit in this distinction and neither do we. To say that a party involved in a Chapter 11 proceeding is in bankruptcy is not a false statement. Therefore Straw's article did not invite the type of retaliatory response made by Revel and Smith, and certainly did not thrust Mr. Straw into a public controversy.

6. In *Philadelphia Newspapers*, the Supreme Court held that the burden of showing falsity in a defamation action against a media defendant must always lie with the plaintiff. *Id.* 106 S.Ct. at 1563. The problem does not arise here because Georgia law puts the burden of proving falsity on the plaintiff. *Medlin v. Carpenter*, 174 Ga.App. 50, 54, 329 S.E.2d 159 (1985). Only the element of malice may be inferred under O.C. G.A. § 51-5-5.

meet the *New York Times* standard of actual malice.

■ In *Philadelphia Newspapers v. Hepps,* —— U.S. ——, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986), the Supreme Court explained (in dicta) that these constitutional restrictions on state defamation law are justified only where a defamation action is brought against a "media defendant," speaking on an issue of "public concern," in order to protect such defendants from the chilling effect that state libel law could have on their first amendment rights. *Id.,* 106 S.Ct. at 1562, 1563 & n. 4. It is clear that *Entrepreneur Magazine* qualifies as a media defendant; according to the testimony of Ron Smith, the magazine has a monthly circulation of over 200,000 and is distributed in 16 foreign countries. The article defaming Straw purported to give investment advice to its readership, which is a matter of public concern. Thus, the appellant falls within the protection afforded by *Gertz,* and Straw must show actual malice to obtain punitive damages.

Straw's burden is not lessened by the plurality opinion in *Dun & Bradstreet, Inc. v. Greenmoss Builder's Inc.,* 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985). There a building contractor sued Dun & Bradstreet for issuing an allegedly false credit report to the contractor's creditors. Because the case involved a private figure plaintiff and speech of "private concern," *i.e.,* a private matter, published by a non-media defendant, a plurality of the court held that punitive damages may be awarded absent a showing of actual malice. *Id.,* 105 S.Ct. at 2946. In *Philadelphia Newspapers,* a majority of the court cited this plurality position with apparent approval. *Id.,* 106 S.Ct. at 1563. However, Straw's case is clearly distinguishable from *Dun,* in that Straw sued a media defendant, and the allegedly defamatory speech involved an area of public concern. This brings his case within the *Gertz* standard.

■ While the above discussion may seem clear-cut, confusion often enters the defamation arena because the word "malice" has two distinct meanings. In order to prevail in a suit for libel, Georgia law requires that the plaintiff show the statement was false *and* "malicious." O.C.G.A. § 51–5–1. In this context "malice" means ill will, and "malicious" denotes statements deliberately calculated to injure. Georgia courts refer to this as "common law malice," and distinguish it from actual or "constitutional" malice. *See Williams v. Trust Co. of Georgia,* 140 Ga.App. 49, 56, 230 S.E.2d 45 (1976). As noted above, the latter term deals only with the speaker's knowledge of the truth or falsity of the allegedly defamatory statements. To give the jury a choice between common law malice and actual malice where the constitution requires that actual malice be shown is reversible error. *Greenbelt Cooperative Publishing Assoc. Inc. v. Bresler,* 398 U.S. 6, 10, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970).

Here the district judge apparently gave the jury a choice between common law or actual malice in finding that the defamatory statements were "malicious." First, the court correctly defined libel as:

[A] false and malicious defamation of a person by printing or writing intending to provoke him to wrath or expose him to public hatred, contempt or ridicule or deprive him of the benefits of public confidence and social intercourse.

The court then gave instructions describing the ways in which malice may be proven. First, in language taken verbatim from O.C.G.A. § 51–5–5, the court stated:

Now, in all actions for printed or spoken defamation, malice is inferred from the character of the charge. However, the existence of malice may be rebutted by proof. In all cases, such proof shall be considered in mitigation of damages.

The court then instructed the jury:

As to proof of malice, proof that the writing is false, and that it maligns the private character and professional standing of another is, itself, evidence of legal malice.

A publication is made with actual malice as that term is used in this charge if it is made with knowledge that it is false or with the reckless disregard of whether it was false or not.

These instructions did correctly state the law, and they did contain the terms "legal" and "actual" malice. Further, in the context of the instruction, "legal" malice probably means common law malice. However, the instructions did not explain the meaning of "legal malice." Nor did the charges explain the difference between actual malice and common law malice. Moreover, the court never explained the importance of actual malice in a defamation suit. Thus, a reading of the instructions in their entirety indicates that the jury could have found that Revel acted with common law malice *or* actual malice in publishing disparaging comments about Mr. Straw. The jurors could have either inferred malice, under the first part of the instructions, or have found actual malice according to the second part of the charge.

■ In another context, there would have not been any error in the charge; common law malice can be inferred, and in some circumstances it is not necessary for a private figure plaintiff to prove actual malice. The problem here is that the court never charged the jury that *only* a finding of *actual* malice would support an award of *punitive* damages in a libel action against a media defendant. Instead, the court gave a standard punitive damages charge, informing the jury:

> Punitive damages, that is aggravated damages, may be authorized when the

circumstances of the wrong are such as to show an entire want of care and indifference to the consequences.

■ While this comes close, it does not sufficiently relate a finding of actual malice to punitive damages. Reckless disregard for the truth of a statement is not the same as reckless disregard for the consequences of one's actions. Thus the instructions authorizing the punitive damage award fall short of what is required by *Gertz* and *Greenbelt*.[7]

To conclude, common law malice and negligence will support the compensatory damage award.[8] Only actual malice will support an award of punitive damages. Here it is unclear whether the jury based its punitive award on a finding of common law malice or actual malice. Thus we must reverse and remand the case for a new trial, for a redetermination of the actual malice issue and the appropriate amount, if any, of punitive damages. The compensatory award is affirmed.[9]

AFFIRMED in part and REMANDED in part, with instructions.

■

7. Contrary to appellant's assertion, we need not hold O.C.G.A. § 51–5–5 unconstitutional because it allows "malice" to be "inferred from the character of the charge." That provision clearly relates to O.C.G.A. § 51–5–1, which requires that a statement be "false and malicious" in order to constitute libel. This means malice in the common law sense, not actual malice. *See Williams*, 140 Ga.App. at 56, 230 S.E.2d 45. The constitutional issue only arises in cases against a media defendant involving either a public figure plaintiff, or a private plaintiff seeking punitive damages, because then actual malice must be proven. Actual malice may not be presumed. *New York Times*, 376 U.S. at 284, 84 S.Ct. at 728. In such cases, the potential constitutional pitfalls posed by § 51–5–5 may be avoided by the trial judge, who need only explain what common law malice means under § 51–5–5, and carefully distinguish it from actual malice.

8. It does seem incongruous common law to state that a defamation action may be based on common law malice and negligence. "Malicious," meaning full of malice, connotes an act of intentional hostility which seems to contradict the possibility of negligence. To avoid confusion, one must remember that malice and negligence support different essential elements of the tort. A statement may be brutally malicious but will not support an action for defamation unless it is also false. Negligence measures only the defendant's degree of care in verifying the truthfulness of the statement.

9. At oral argument counsel for appellant recognized that the two damage awards were separable. He stated:

> [T]he most troubling part, legally, of this case is the punitive or presumed damages, and I will admit to the court, there may be a determination and a distinction where the compensatory damages can stand.