### 72877. MILLER v. WOODS.
(349 SE2d 505)

BIRDSONG, Presiding Judge.

Libel — Actual Malice. Ralph E. Woods was the regularly appointed Chief of Police for the City of Clayton for the year 1984. He had served in that same position for several years preceding 1984. In the election occurring in November 1984, a new mayor and at least one new councilman were elected to the City of Clayton governing body. Among other offices, the office of Chief of Police was appointed and filled each year by the city council. The new mayor-elect made an out-of-country vacation trip late in December and did not return to Clayton until late January 1985. Thus, the appointive offices were not filled until his return. However, the mayor-elect appointed the appellant Albert W. Miller the police commissioner, and thus the supervisor over the Chief of Police, Woods.

Prior to and during January 1985, Miller conducted a personal investigation and held conversations with other citizens before commencing supervision over the police department and over Chief Woods. Miller directed Woods to institute weekend patrols (to make a presence) at a local theater which had been experiencing rowdyism. Woods was directed to institute and make a more detailed report of daily police activities (logs of duties performed). Woods was also told that police cars should not be driven outside the City of Clayton (though this was disputed) and the practice of the officers using their cars after duty hours for personal purposes was to be discontinued.

Miller, on two successive weekends after these new directions were issued to Woods, went to the area of the theater on both Friday and Saturday evenings a half hour before the theater opened and a half hour after the theater closed. Except on one occasion when Miller observed a disturbance and a police officer present to effect an arrest, Miller did not see any sign of the patrols he had directed Woods to institute. His examination of the daily logs on and after

February 1, 1985, revealed two things: that the logs were not much changed and thus were not in compliance with Miller's directions to improve the content of the log of daily activities; and further, none of these logs indicated any of the four patrolmen was involved in patrolling the theater on the weekends as directed by Miller. Additionally, both Miller and the mayor testified they overheard one of the other commissioners state that she had observed Woods using his patrol car up at Lake Burton in violation of Miller's specific direction that the patrol cars not be used for personal purposes during non-duty hours and not outside the limits of the City of Clayton. This latter statement was disputed by the declarant who said she had seen another car and another person at Lake Burton and did not mention Woods by name.

As a result of Miller's investigations of the operations of the police force during the weeks after his directions to Woods, Miller concluded that Woods demonstrated lack of leadership both in exhibiting an insubordinate attitude and in failing to follow or implement specific instructions. As a result, Miller prepared a memorandum for consideration by the Clayton City Council and for insertion into Woods' personnel file which concluded that this lack of leadership was reflected by three specific acts. These were that Woods failed to follow instructions (1) by failing to inform his patrolmen to patrol the theater area; (2) by failing to inform his patrolmen to maintain more detailed daily logs of activities; and (3) by driving his patrol car to Lake Burton as observed by the named councilwoman. When the councilwoman read the memorandum prior to the council meeting, she caused the memorandum to be changed (apparently without the knowledge of Miller) to reflect that "a citizen" (unnamed) had seen a patrol car in the Lake Burton area. As a result of this demonstrated lack of leadership, Miller recommended that Woods be demoted from police chief to patrolman, an undisputed power of the council.

This memorandum was presented to the Clayton City Council which adopted the recommendation. Rather than accept the demotion, Woods resigned from the police force. He then brought this complaint contending that the information in the memorandum contained false statements which were known to Miller to be false or which were made with reckless disregard for verity and that the memorandum constituted a libel which had brought harm and thus damages to Woods. After a jury trial during which Miller sought a directed verdict on the completion of Woods' testimony and at the completion of all the evidence, the jury returned a verdict in favor of Woods in an amount of $18,000. The trial court denied a motion for judgment notwithstanding the verdict and entered judgment on the verdict. The trial court likewise denied a motion for a new trial. Miller now seeks this appeal enumerating as error the denial of the

judgment notwithstanding the verdict on the ground there was no evidence of actual malice in the preparation of the memorandum by Miller as well as four other asserted trial errors. *Held*:

The parties to this litigation do not dispute that Woods as Chief of Police of Clayton is a "public official." As he is a public official, in order for the allegations in Commissioner Miller's memorandum to be libelous, the publication must not only have been false but uttered with knowledge of the falsity or with such reckless disregard for the truth that the jury could find that Miller published the memorandum with actual malice. See *Williams v. Trust Co. of Ga.*, 140 Ga. App. 49, 54 (230 SE2d 45). Stated otherwise, the memorandum recommending reduction to patrolman must have contained false allegations which were uttered with actual malice; i.e., established by clear and convincing proof that the defamatory falsehood was made with actual knowledge of its falsity or with such reckless disregard for the truth that the statements were made without any basis for the pronouncements. *Rosenblatt v. Baer*, 383 U. S. 75 (86 SC 669, 15 LE2d 597).

Actual malice in the sense of libeling a public official does not necessarily extend to ill will, hatred or actions calculated to injure for this may run afoul of the freedom of speech protected by the First Amendment. *Garrison v. Louisiana*, 379 U. S. 64, 72 (85 SC 209, 13 LE2d 125). Moreover, knowledge of falsity or reckless disregard of the truth may not be derived solely from the language of the publication itself. *Williams v. Trust Co. of Ga.*, supra at pp. 55-56. Constitutional malice does not involve the motives of the publisher but is based upon his awareness of actual or probable falsity or his reckless disregard for possible falsity.

Reckless disregard requires clear and convincing proof that Miller was aware of the likelihood he was circulating false information. *New York Times Co. v. Sullivan*, 376 U. S. 254 (84 SC 710, 11 LE2d 686). Thus it is not sufficient to measure reckless disregard by what a reasonably prudent man would have done under similar circumstances nor whether a reasonably prudent man would have conducted further investigation. The evidence must show in a clear and convincing manner that Miller in fact entertained serious doubts as to the truth of his statements in the demotion memorandum. *Williams v. Trust Co. of Ga.*, supra at p. 55.

Based upon the foregoing, it is manifest that Woods' burden of proof was to show actual malice — that is that Miller published the memorandum with knowledge it was false or exhibited reckless disregard of whether the information was true or false. Such actual malice may not be presumed but is subject to being proven with convincing clarity. *New York Times Co. v. Sullivan*, supra at p. 284.

It is clear that each of the three disputed statements made by Miller was incorrect in that each made a false assumption. He pub-

lished in the memorandum that Chief Woods did not instruct his patrolmen to patrol the theater area on weekends. It is clear that Woods did instruct or cause his patrolmen to be instructed that patrols were required. Miller published that Chief Woods did not instruct his patrolmen to maintain more detailed records of daily activities. Indisputably such instruction was given to the patrolmen. Lastly, it was stated that Chief Woods had been seen by a commissioner driving his patrol car at Lake Burton notwithstanding the fact that the commissioner denied making such a statement to Miller and Woods denied being at Lake Burton after Miller's instructions.

We have an independent obligation as an appellate court to examine this record and determine if this verdict and judgment was supported by clear and convincing proof of actual malice. *Bose Corp. v. Consumer's Union*, 466 U. S. 485, 511 (104 SC 1949, 80 LE2d 502). In the exercise of that duty, we note that in explanation of these erroneous allegations, Miller proffered unrebutted evidence that after giving the direction to Woods to institute the weekend patrol at the local theater, he went himself to the area on two successive weekends and found no patrolmen on routine patrol. On one evening, he saw a patrolmen making an arrest but that officer was there in response to a call and not because of routine patrol duties. He also admitted that later he became aware that a patrol had been instituted but this patrol started the weekend after the memorandum had been prepared and was submitted to the council. There was no evidence offered by Woods that Miller's statement that Woods had not instructed the patrolmen to institute the routine patrol was wholly unfounded or was maliciously untruthful or was not based upon a reasonable interpretation of existing facts known to Miller at the time of the memorandum's preparation.

Likewise, though it equally is indisputable that Chief Woods caused his chief deputy to instruct the patrolmen to file more complete and more detailed daily logs, it is clear from the record that Miller checked the initial reports after his direction to Chief Woods and found the reports not to have changed, thus giving rise to a reasonable conclusion that Woods had given no such instructions. Miller testified without rebuttal that the daily logs that were identified by him as complete or satisfactory were all filed and came to his attention after the memorandum had been prepared and submitted to the council.

Lastly, even though the commissioner allegedly who made the statement upon which Miller relied denied she had identified Woods as being the police officer she had seen at Lake Burton, the evidence equally is clear that the name of the commissioner was not removed from Miller's memorandum until the afternoon before it was submitted to the council for consideration and the change was made without

the knowledge of Miller. As to the belief in the truth underlying the statement that Woods had been seen at Lake Burton in contravention of the direction not to use patrol cars outside the city limits of Clayton, the evidence offered by Miller and the mayor was that the recanting commissioner had clearly identified Woods by name as the person she had seen and did not make that recantation to Miller before the memorandum was filed. Though this evidence was disputed, there is no dispute that Miller thought the statement was true as did the mayor.

In substance then, the transcript reflects that Miller consistently maintained he believed in the truth of the statements in the memorandum and continued to maintain their truthfulness even as of the date of the trial. Woods, in meeting his burden of proof, was forced to rely on the fact that the statements in the memorandum were not true and that investigation by Miller would have disclosed their falsity. But as pointed out earlier in this opinion, it is not sufficient to measure reckless disregard by what a reasonably prudent man would have done under similar circumstances nor whether a reasonably prudent man would have conducted a further investigation before publishing the statements. Woods is compelled to rely on the contents of the memorandum and to ignore Miller's explanation of the circumstances to demonstrate a mind filled with actual malice and thus actual knowledge that the statements were known by Miller to be false. While concededly the jury was not required to accept Miller's explanation, it was Woods' burden to offer a different conclusion. It is this failure to offer a reasonable alternative by clear and convincing evidence other than a presumption of falsity that constitutes the failure of proof. Woods cannot rely on a presumption that statements in the memorandum were false solely because Miller may have harbored ill feeling toward Woods, nor that the statements in fact were false. In order to meet his burden, Woods had to prove by clear and convincing evidence that Miller in fact knew the statements were false or that there was no reasonable basis in fact for Miller to conclude his statements probably were true. *Rosenblatt v. Baer*, supra. We are satisfied that Woods did not meet this test of clear and convincing evidence to establish published libel of a public official. Accordingly, we conclude the trial court erred in not granting Miller's motion for a directed verdict for failure to prove actual malice and this error was compounded by the failure to grant Miller's motion for judgment notwithstanding the verdict. The remaining enumerations of error are rendered moot by the conclusion herein that Woods failed in meeting his burden of establishing actual malice in Miller's publication.

*Judgment reversed. Banke, C. J., and Sognier, J., concur.*

DECIDED SEPTEMBER 24, 1986 —
REHEARING DENIED OCTOBER 8, 1986 

John M. Brown, for appellant.
James E. Cornwell, Jr., for appellee.