A90A0037. FINKELSTEIN v. ALBANY HERALD PUBLISHING COMPANY, INC.
(392 SE2d 559)

BANKE, Presiding Judge.

This is a libel action filed by Albany attorney James Norman Finkelstein against The Albany Herald Publishing Company, Inc., to recover damages for certain allegedly defamatory statements made about him in a newspaper article dealing with his views on the manner in which the Dougherty County District Attorney's office was being run. The case is before us on appeal from the grant of the defendant publisher's motion for summary judgment.

The article appeared in the December 6, 1987, edition of The Albany Sunday Herald. It was headed, "MAVERICK LAWYER CHARGES DA WITH 'LACK OF PROFESSIONALISM' "; and in its closing paragraphs, beginning with the statement, "Finkelstein has come under legal fire himself," it touched on various colorful incidents from the plaintiff's own personal and professional life. Included in this portion of the article were statements that Finkelstein had once spent 10 days in jail rather than pay a fine after being found in contempt of court; that he had "in 1981 attempted to subpoena former President Jimmy Carter, former 'first brother' Billy Carter, and

former Gov. George Busbee while defending a client, before having the subpoenas quashed by a Sumter Superior Court Judge"; that "[i]n 1983, charges of property damage and battery against Finkelstein in connection with a fracas in a fashionable Albany restaurant were dismissed by [a superior court judge] after [a state court judge] had released [him] on the condition he seek psychiatric treatment"; that "[d]uring the fracas, Finkelstein had thrown a chair through an antique stained glass window, allegedly in an attempt to hit attorney Larry Butler, who was representing Finkelstein's common-law wife in a child custody case"; and that the charges against Finkelstein arising from this incident had been dismissed "after [he] made restitution to the restaurant owner."

In response to this article, Finkelstein wrote a three-page letter to the newspaper complaining of various asserted inaccuracies in the foregoing statements and requesting that these inaccuracies be corrected. Three days later, on December 9, 1987, the defendant published a corrective article under the heading, "Clarification Provided of Lawyer's Background," reporting that Finkelstein had actually spent only 10 hours, rather than 10 days, in jail as the result of the contempt citation; that the woman referred to as his common-law wife was not actually his common-law wife, although they had "lived together from January 1980 to October of 1982, and she bore him a son"; and that the attorney who had represented him in connection with the criminal charges arising from the restaurant incident had "stated that Finkelstein claimed no responsibility for the damage caused, but paid the owner for the property damage."

Finkelstein has acknowledged that much of what was reported about him in these articles was either true or, if false, not defamatory. For example, while he denies ever having had a marriage relationship with the woman described by the newspaper as his common-law wife, he concedes that they had a child together and that, under the circumstances, the false report that he was at one time married to her resulted in no injury to him. Similarly, he does not contend that he suffered any injury as a result of the report that he had spent 10 days, rather than 10 hours, in jail due to the contempt citation. With respect to the disposition of the criminal charges against him arising from the incident at the restaurant, the plaintiff does not deny that the charges were dismissed "after" he was released on bond under the condition that he obtain psychiatric treatment; however, he contends that by its wording the article conveyed the false impression that the charges had been dismissed *because* of his agreement to obtain psychiatric treatment, whereas they had actually been dismissed because no crime was committed. With respect to his attempt to subpoena former President Jimmy Carter, his brother Billy, and former Gov. George Busbee in defense of a client, he contends that by omitting to

mention that the client in question had been charged with making terroristic threats against these three individuals and by falsely reporting that the subpoenas had been quashed (whereas, in actuality, Billy Carter appeared at the preliminary hearing, and the other subpoenas simply were never issued because the charges against the client were dismissed), the article conveyed the false impression that his actions in the case were frivolous or unprofessional. He asserts that the combined impact of these alleged errors, omissions, and half-truths was to portray him, falsely and maliciously, as an unstable individual who did not comport himself in a dignified and professional manner in his career as a lawyer. *Held*:

1. The plaintiff contends that the trial court erred in concluding that he was "at the very least, a limited public figure. . . ." We disagree.

One who voluntarily thrusts himself to the forefront of a public controversy in order to influence the resolution of the issues involved is deemed to be a public figure with respect to the controversy. See *Gertz v. Robert Welch, Inc.*, 418 U. S. 323, 345, 351-2 (94 SC 2997, 41 LE2d 789) (1974); *Hemenway v. Blanchard*, 163 Ga. App. 668, 670-71 (294 SE2d 603) (1982). In the portion of the article dealing with his criticisms of the district attorney's office, the accuracy of which is not disputed, Finkelstein is quoted as having said: "Something is being done here that's not right and needs to be corrected. . . . I feel like the kid in the story of the emperor's new clothes. I'm the only one willing to say out loud what everybody else is thinking." Also, it appears without dispute that three days before the publication of the original article the plaintiff made an appearance on a local television program for the purpose of, in his own words, discussing "the problems that had occurred in specific cases with the district attorney's office." Plainly, the plaintiff had voluntarily and deliberately thrust himself into the forefront of the controversy surrounding the district attorney's office, thereby making himself a public figure with respect to that controversy.

2. In order for a plaintiff to recover damages for a defamatory statement made in a report concerning a controversy with respect to which he has become a public figure, he must prove that the defendant acted with "actual malice" in publishing the alleged defamatory falsehoods, that is, with knowledge that they were false or with reckless disregard of whether they were false or not. See *New York Times v. Sullivan*, 376 U. S. 254, 279-80 (84 SC 710, 11 LE2d 686) (1964); *Curtis Pub. Co. v. Butts*, 388 U. S. 130 (87 SC 1975, 18 LE2d 1094) (1967); *Miller v. Woods*, 180 Ga. App. 486, 488 (349 SE2d 505) (1986); *Williams v. Trust Co. of Ga.*, 140 Ga. App. 49 (230 SE2d 45) (1976). "[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before pub-

lishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U. S. 727, 731 (88 SC 1323, 20 LE2d 262) (1968).

In affidavits submitted in support of the defendant's motion for summary judgment, both the reporter who had written the allegedly defamatory article and her editor averred that, at the time of publication, they believed all of the statements concerning the plaintiff were true. Not only has the plaintiff presented no evidence tending to controvert these averments, his own deposition testimony tends to support them. For example, while the plaintiff denied having thrown a chair at anyone during the fracas with Butler at the restaurant, he acknowledged that he tried to fight Butler, and he did not deny that he had picked up a chair as if to hit him with it before ultimately tossing it to one side. In addition, he acknowledged both that the newspaper's version of the incident was, in effect, consistent with Butler's and that he could identify no other witnesses whose account of the incident might be consistent with his own. While he maintained that the charges against him arising from the incident had been dismissed because no offense was committed rather than, as the article reported, because he had made restitution to the restaurant's owner, he was less than forthcoming on the issue of whether such restitution had in fact been made, going so far as to refuse to permit the attorney who had represented him in dealing with the charges to be questioned on the matter. Under the circumstances, even assuming arguendo that the article contained any statements which might otherwise be considered defamatory, the trial court correctly concluded as a matter of law that the defendant had neither believed they were untrue before publishing them nor entertained serious doubts about their accuracy. It follows that the court did not err in granting the defendant's motion for summary judgment. Accord *Miller v. Woods*, supra; *Williams v. Trust Co. of Ga.*, supra.

*Judgment affirmed. Birdsong and Cooper, JJ., concur.*

DECIDED MARCH 12, 1990 —
REHEARING DENIED MARCH 26, 1990 — 

*James N. Finkelstein*, pro se.
*Divine, Wilkin, Deriso, Raulerson & Fields, E. B. Wilken, Jr., Heyman & Sizemore, William H. Major*, for appellee.