A07A1979. ATKINS v. NEWS PUBLISHING COMPANY, INC. et al.
A07A2030. WOMBLE v. ATKINS.
(658 SE2d 848)

ELLINGTON, Judge.
Truman Atkins appeals from the order of the Superior Court of Walker County granting summary judgment in this libel action to News Publishing Company, Inc. d/b/a Walker County Messenger, publisher Don Stillwell, writer Catherine Edgemon, cartoonist Debbie Tindell, and editorialist Ralph Keith[1] ("the newspaper defendants"). Pursuant to a granted interlocutory appeal, Nathaniel Womble appeals from the same order, which denied his motion for summary judgment. Because these appeals challenge the same order and arise from the same factual dispute, we consolidate them. For the reasons that follow, we affirm Case No. A07A1979, and we reverse Case No. A07A2030.

Upon motion for summary judgment, it is the movant's burden to show that no jury question remains as to any material fact and that he or she is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). The movant may discharge this burden by reference to affidavits, depositions, and other documentary evidence in support of the non-movant's case. Id. After the movant discharges this burden, the nonmovant cannot rest on the pleadings, but instead must come forward with evidence giving rise to a triable issue. OCGA § 9-11-56

---

[1] Although Keith is not a newspaper employee, the paper regularly published his letters to the editor.

(e); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). On appeal, this Court "conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citation and punctuation omitted.) *Riddle v. Golden Isles Broadcasting*, 275 Ga. App. 701 (621 SE2d 822) (2005).

So viewed, the record reveals the following. Atkins served as superintendent of the Walker County School System from 1993 until his resignation in December 2001. In his capacity as superintendent, Atkins supervised the employees, the programs, the buildings, the curriculum, the finances, and the 8,600 students of the Walker County school system. He also acted as a liaison between the citizens of Walker County and the Board of Education, regularly meeting with the board, the public, and the press, and publishing a quarterly newsletter.

Prior to the incidents giving rise to this litigation, Atkins had been the subject of community criticism and several formal complaints concerning the performance of his duties as superintendent. Citizens of Walker County met a few times to discuss their concerns, and they decided to draft a petition seeking Atkins' removal. One of these citizens asked her brother, Womble, for help. Womble, a former citizen of the county, agreed to help and drafted two substantially similar petitions based upon complaints he gathered from those who attended the meetings. He also wrote letters to the school board for his sister, whose son had been expelled. The first petition was directed to the lieutenant governor; the second, to the governor. Both petitions alleged that Atkins abused his position and failed to properly perform his duties as superintendent.[2] Womble deposed that he did not mail the petitions or investigate the truthfulness of the citizen complaints, which he said he had no reason to doubt; rather, he simply drafted them into what he considered the proper form, added verbiage copied from legal treatises, and left the petitions with the concerned citizens. Womble did, however, fax a copy of the petition to Edgemon, a writer with the Walker County Messenger.

After Edgemon received the fax, she interviewed Womble. She also called Randy Bryant, who was running against Atkins for

---

[2] These lengthy petitions contained only a few particularized allegations: (1) Atkins organized an "unlawful court" and used it "to deprive students of their constitutional rights"; (2) he was "instrumental in preventing a warrant being issued for the arrest of a faculty member that committed an assault on a student"; (3) he "refused members of the community access to public records"; (4) he used his position to influence faculty members "to harass . . . certain groups of students"; (5) he invited state judges to public meetings as an intimidation tactic; and (6) "he imposed taxes upon the people without their consent."

superintendent, and determined that he was not actively involved in the petition. Edgemon called Atkins' office to ask him about the petition. A day later, Atkins responded to Edgemon's call. After Edgemon read the allegations of the petition to Atkins and faxed the petition to his office, Atkins told Edgemon that the petition was ludicrous and nonsensical, but he declined to make a comment on the record. Edgemon, who was working on a deadline, consulted her publisher, Stillwell, and he decided the story was newsworthy and published it.

On September 29, 2000, the Walker County Messenger ran Edgemon's story, titled: "Expelling the Superintendent? Petition Drive Planned to Oust Walker County Superintendent." The article described Womble as a "civil rights advocate" orchestrating a petition to oust Atkins, stated that Womble was holding a meeting to collect signatures on the petition the following day, and stated that Womble planned to hand-deliver the petition to the lieutenant governor. The article accurately summarized the petition thus:

> The petition, among its several charges, says Atkins refused some people access to public records, convinced faculty members to harass some students and uses tribunals to deny students their constitutional rights. He also used his position to persuade a local judge not to issue an arrest warrant for a faculty member who assaulted a student, it says.

The same day, the Messenger published a letter to the editor written by Keith, a former school administrator who had three children in the Walker County school system. The editorial letter was the first of six the Messenger would publish over the next few months, letters in which Keith expressed his opinion about Atkins' management and leadership ability, his curriculum and finance choices, and his "politicization of the education process."

The Messenger also published more news articles following up on Womble's second petition and the number of signatures obtained, and a cartoon drawn by Tindell. The cartoon, titled "Scary Thoughts," depicted a school board Halloween party. Atkins, dressed as the heartless Tin Man, sat at a table with fellow board members, most of whom were dressed as scarecrows. Atkins was depicted thinking: "If they only had a brain, ha ha ha ha."

After the Messenger refused to print retractions, Atkins filed suit against Womble and the newspaper defendants, alleging the petitions, the articles, the editorials, and the cartoon constituted libel per se. After considering the parties' motions, the court denied Womble's motion for summary judgment, denied Atkins' motion for partial

summary judgment, and granted summary judgment to the newspaper defendants. These appeals followed.

In his complaint and appellate brief, Atkins concedes that he was a public official at the time of the alleged defamatory publications. In a suit alleging defamation, a plaintiff who is a public official must prove the following five essential elements of the tort:

> (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm[;] [(5) and, where], as here, the defamation action involves a public [official], plaintiff must show that the alleged defamatory statements were made with actual malice, that is, with knowledge that they were false or with reckless disregard for whether they were false.

(Citations and punctuation omitted.) *Bollea v. World Championship Wrestling*, 271 Ga. App. 555, 557 (1) (610 SE2d 92) (2005); see also *Purvis v. Ballantine*, 226 Ga. App. 246, 249 (3) (487 SE2d 14) (1997) (actual malice requirement applies to both public figures and public officials).

With respect to proof of actual malice at summary judgment, this Court has explained that defendants may point out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support this essential element of the nonmoving party's case. *Stange v. Cox Enterprises*, 211 Ga. App. 731, 732 (1) (440 SE2d 503) (1994). Further, when the defendants make such a showing, the plaintiff cannot rest on the pleadings, but must come forward with evidence of actual malice, that is, that the defendant made the statements with the knowledge that the statements were false or made with reckless disregard for whether they were false. Id. at 732 (1), (2).

Finally, the "reckless disregard" for the truthfulness of the statements

> necessary to show actual malice is not measured by whether a reasonably prudent man would have published or would have investigated before publishing. *There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. . . .* [T]his admittedly high standard of proof may protect some erroneous or false communications, but is required because the stake of the people in public business and the conduct of public officials is so great that neither the

defense of truth nor the standard of ordinary care would protect against self-censorship and thus adequately implement First Amendment policies. *[Thus, t]he public official in a defamation action must show actual malice with "convincing clarity."*

(Citations and punctuation omitted; emphasis supplied.) *Stange v. Cox Enterprises*, 211 Ga. App. at 732-733 (2). Or, stated differently, it has been held that "reckless disregard" is established by evidence showing that the defendant acted with a "high degree of awareness of probable falsity." (Citation and punctuation omitted.) *Lake Park Post v. Farmer*, 264 Ga. App. 299, 301 (2) (590 SE2d 254) (2003). "Absent an admission by the defendant that he knew his material was false or that he doubted its truth, a public figure [or official] must rely upon circumstantial evidence to prove his case." (Citation and punctuation omitted.) Id. at 302 (2). Whether there was clear and convincing evidence of actual malice sufficient to survive a motion for summary judgment is a question of law for the court. See *Finkelstein v. Albany Herald Publishing Co.*, 195 Ga. App. 95, 98 (2) (392 SE2d 559) (1990).

### Case No. A07A1979

1. In Case No. A07A1979, Atkins contends the court erred in granting summary judgment to the newspaper defendants and erred in denying his motion for summary judgment because the record showed that each defendant knew or should have known they were making false, libelous statements. The newspaper defendants presented the opinion testimony of an expert who deposed that the articles published were newsworthy, truthful and accurate, did not vouch for the petition, and showed no reckless disregard for the truth. Each of the newspaper defendants deposed that they were either expressing an opinion or, to the extent they were reporting the news or making factual assertions, they did not entertain serious doubts as to the truthfulness of their published statements. Pretermitting whether the newspaper defendants' published statements were false, the record does not support a finding that there was clear and convincing evidence of the essential element of actual malice:

(a) The record supports a finding that Edgemon accurately reported what she and her publisher, Stillwell, deemed a newsworthy story, that Walker County citizens were petitioning to oust their school superintendent. Edgemon contacted Atkins about the story and provided him with a copy of the petition, but Atkins failed to formally comment on the petition or to refute the allegations contained within it. Edgemon's follow-up articles also reported on the progress of the petition, the concerns of the citizens, and Atkins'

continuing "no comment" position. One of the articles covered Atkins' supporters, and reported that many members of the board as well as a professional association wholeheartedly supported him. Edgemon deposed that she never entertained serious doubts about the truthfulness of the petition; rather, she was reporting on the fact of the petition itself and the controversy surrounding Atkins.

(b) Stillwell deposed that when he made the decision to publish Edgemon's articles, he had no reason to doubt the truthfulness of the allegations of the petition. Further, he would have published Atkins' response to the petition had Atkins made a public comment.

(c) Keith, a father of three children and a former assistant principal with twelve years of experience in the Walker County school system, deposed that he wrote his letters to the editor to express his opinion about Atkins' use of county SPLOST funds, the dismissal of a tenured teacher, Atkins continued "no comment attitude," his curriculum changes, and his "pet projects," like spending county funds to remodel the board room to put the superintendent in the center of the room. When asked what evidence he had to support the facts presented in his letters to the editor, Keith deposed that his statements were based "on my personal experience, based on my personal knowledge. You have to remember, these are letters in the opinion page based on my opinion of what I see." Keith's deposition reveals that he entertained no doubt as to the truthfulness of the facts upon which his opinions were based, nor is there any evidence suggesting that he should have known they were false.

(d) Tindell deposed that her cartoon titled "Scary Thoughts," was about her fears that local taxes were going up again. She was expressing her opinion that Atkins lacked compassion in his role as superintendent, and that the board members deferred to him and failed to think for themselves about the issues before them.

In support of his argument on summary judgment that the newspaper defendants had actual malice when they published their statements, Atkins does not come forward with clear and convincing evidence that the defendants made their statements with the knowledge that the statements were false or that they were made with reckless disregard of the truth. Instead, Atkins speculates that the newspaper defendants either were part of a conspiracy to elect Bryant, Atkins' competitor, or he argues that they failed to investigate by checking "public records available" to them. Although Atkins mentions school financial audits and performance evaluations as sources of contradictory information, he does not elaborate on who prepared the public records, where they are housed, and whether they were readily accessible to members of the press. Further, he does not cite to any specific statements demonstrating the falsity of any specific allegation. Even Atkins' expert conceded she did nothing to

determine whether the allegations of the petition were false, and consequently could not address whether what the newspaper defendants said about Atkins "was true or false or whatever." Consequently, Atkins failed to present clear and convincing evidence that the newspaper defendants entertained serious doubts as to the truthfulness of their publications. Absent such evidence of the requisite element of actual malice, Atkins' defamation claims against them must fail. *Bollea v. World Championship Wrestling*, 271 Ga. App. at 559 (1). The trial court did not err in granting summary judgment to the newspaper defendants.

*Case No. A07A2030*

2. Womble appeals from the court's order denying his motion for summary judgment, arguing, among other things, that the record fails to show that he acted with actual malice when he drafted the petitions to remove Atkins from office. Womble deposed that he drafted two substantially similar petitions based upon the complaints of parents who attended meetings to discuss Atkins' performance as superintendent. As shown above, both petitions alleged that Atkins abused his position and failed to properly perform his duties as superintendent. Womble deposed that although he did not investigate the truthfulness of the citizen complaints, he had no reason to doubt them since the complaints came from his sister, whom he trusted, and members of the community, whom he knew or had urged to be truthful.

Atkins contends he presented clear and convincing evidence of Womble's actual malice by showing that Womble was part of a political movement to elect Atkins' competitor, Bryant, was motivated by personal ill-will, and was negligent for failing to inspect public records which would have revealed the contents of the petition to be false. However, none of these things is sufficient to establish the requisite actual malice, which requires there be evidence from which a trier of fact could reasonably infer that Womble acted with a "high degree of awareness of probable falsity." (Citation and punctuation omitted.) *Lake Park Post v. Farmer*, 264 Ga. App. at 301 (2). The record does not demonstrate with convincing clarity that Womble acted with such awareness.

Womble's deposition reveals that he adamantly believed that students, like his sister's son, had been subjected to unfair and unconstitutional treatment by Atkins. Womble wrote Atkins and the school board members on behalf of his sister and her son, and Atkins cites to these letters for the proposition that Womble should have been aware of the falsity of his statements. However, the letters are insufficient to create a jury question on the issue of malice for several

reasons. With respect to Womble's assertion that students, including his sister's son, were expelled from school without due process, Womble's letters reveal his continued belief that the student court was an "outlaw" court and that Atkins was a "tyrant" who exceeded his authority. Although Atkins and other school officials wrote response letters to Womble's sister, the letters did not explain the process actually due students, discuss how the board complied with it, but simply enclosed a copy of OCGA § 20-2-1160 pertaining to school tribunal appeals. And Womble, who is not a lawyer, displayed little understanding of the law in his letters or his deposition except his belief that the law the board relied on was unconstitutional and that the students were unfairly deprived of their right to attend their high school. Also, a letter signed by Atkins reveals that Womble's sister was denied access to requested student tribunal hearing records. Atkins did not explain in layman's terms that the hearing was confidential and that the law prohibited him from revealing whether it even occurred, but summarily noted that the records were "not subject to inspection" pursuant to "OCGA § 20-2-757 (b)." Because a trier of fact could construe these letters as providing a basis for Womble's beliefs and statements, they do not show with convincing clarity that Womble acted with a high degree of awareness of the probable falsity of his own statements that students were treated unfairly and that parents were denied access to public records. Finally, the record also fails to show with convincing clarity that Womble knowingly wrote a false petition as part of a plot to further Bryant's political aspirations. In fact, the record shows he was unaware of Bryant's plans.

Consequently, given the record before us, we must conclude that Atkins failed to present clear and convincing evidence that Womble entertained serious doubts as to the truthfulness of his publications. Absent such evidence of the requisite actual malice, Atkins' defamation claims against him must fail. *Bollea v. World Championship Wrestling*, 271 Ga. App. at 559 (1). Therefore, the trial court erred in denying summary judgment to Womble.

*Judgment affirmed in Case No. A07A1979. Judgment reversed in Case No. A07A2030. Andrews, P. J., and Adams, J., concur.*

DECIDED MARCH 6, 2008.

*Archer & Lovell, David G. Archer*, for Atkins.

*Brinson, Askew, Berry, Seigler, Richardson & Davis, Robert L. Berry, Jr., Bandy & Stagg, Lawrence A. Stagg, Minor, Bell & Neal, Dennis D. Watson, Robert D. Jenkins, Jr., Larry B. Hill*, for News Publishing Company, Inc.

*Gray, Rust, St. Amand, Moffett & Brieske, Michael J. Rust, Debra K. Haan, Chanda R. DeWindt,* for Womble.