In re Dexter ELLERBEE, Debtor.

Dexter MILLS, Plaintiff,

v.

Dexter ELLERBEE, Defendant.

Bankruptcy No. 93–69789.
Adv. No. 93–6541.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Jan. 6, 1995.

Clayton O. Carmack of Moore & Rogers, Marietta, GA, for plaintiff.

Glenn Loewenthal of Loewenthal, Jackson & Brown, Atlanta, GA, for defendant/debtor.

### *DECISION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT*

JAMES E. MASSEY, Bankruptcy Judge.

In 1987 and 1988, Dexter Ellerbee repeatedly libeled Dexter Mills. Mills sued in state court and won a judgment for punitive damages and attorney's fees, so Ellerbee filed a bankruptcy petition. Mills seeks a ruling from this court that the judgment is for a willful and malicious injury and thus is not dischargeable.

The trial court charged the jury that it could find actual malice so as to award punitive damages if it found that Ellerbee recklessly disregarded the truth. On this basis, Mills contends that the doctrine of collateral estoppel bars further litigation about the willful and malicious nature of the injury. Ellerbee argues, however, that the court should come precisely to the opposite conclusion because, he contends, if he acted recklessly, his conduct could not have been willful.

An Eleventh Circuit case in this area holds that a state court finding of actual malice based on a reckless disregard for the truth renders a debt for defamation nondischargeable. A Sixth Circuit case, on the other hand, holds that reckless disregard for the truth can never be the basis for determining that a debt for defamation is nondischargeable. The split of authority on the meaning of section 523(a)(6) of the Bankruptcy Code springs partly from interpretation of somewhat ambiguous legislative history published in 1977 and 1978. That commentary stated that the drafters intended the enactment of that section to overrule cases that had applied a "reckless disregard standard" in determining the dischargeability of a debt for an allegedly willful and malicious injury.

Confusion has also resulted from the use of the words "malice" or "malicious" in the context of tort law as a guidepost that points in the direction of a "willful and malicious injury" or from the use of the word "reckless" as a guidepost to navigate in the opposite direction. That methodology is like using a compass too close to a magnet. The arrow may or may not point in the right direction. The reason is that in areas of law other than bankruptcy, these words do work, often in a foggy way, that may or may not be true to what section 523(a)(6) is getting at. The potential for wandering in the wrong direction increases when the underlying tort is defamation, because that law has its own peculiar and sometimes confusing or conflicting meanings for these words.

After considering the arguments of the parties and the evidence submitted in connection with the motions, the court denies Ellerbee's motion for summary judgment be-

cause reckless disregard of the truth does not preclude a willful and malicious injury. It grants Mills' motion for summary judgment, in spite of the fact that the state court finding of actual malice is not entitled to collateral estoppel effect, because he presented uncontroverted evidence that proves the debt is for a willful and malicious injury.

### FINDINGS OF FACT

The material facts are not in dispute. Mills was the Principal of North Cobb High School in Cobb County, Georgia from 1986 through 1990. He gave Ellerbee, a teacher at the high school during the 1987 school year, an unfavorable evaluation: Thereafter, Ellerbee resigned his teaching position. In his answer to the complaint in this adversary proceeding, Ellerbee admitted that after he resigned, he made numerous written and oral statements in which he implicitly or expressly alleged that Mills had engaged in immoral, unethical, fraudulent, harassing, terroristic and other improper conduct. He accused the Plaintiff of having committed crimes. Ellerbee made the allegations in letters to teachers, local officials, community leaders and the Cobb County School Board, in advertisements published in the local paper, and on signs posted near the high school. The excerpts of the transcript of the trial in the Superior Court submitted by Mills show that Ellerbee repeatedly and obsessively published statements impugning Mills' character and integrity.

In January, 1989, Mills sued Ellerbee for libel and slander in the Superior Court of Cobb County, Georgia. At the trial, Ellerbee admitted that the allegations he made against Mills would tend to injure one's reputation. He admitted that he had published a letter to teachers calling for Mills' resignation or transfer and the placement of a written reprimand in Mills' personnel file for "fraudulent actions." The letter further stated, "Alone there is really not much any of us could do, but in unity, we strike back at the man that has done so much harm to so many." (Trial Tr. 59).

Ellerbee received a letter from counsel for Mills in early November, 1988 requesting him to retract and to stop making false state-

ments about Mills, but he continued to do so. (Trial Tr. 76–77). Ellerbee made no investigation of the statements that he published: "... I believed them to be true, but I had no way of investigating the allegations made." (Trial Tr. 139). He also testified, "... It was not my—I didn't think it was my role to investigate because I didn't have the tools, to investigate, as I've testified." (Trial Tr. 151).

The state court charged the jury as follows:

> ... the jury may give additional damages either to deter the wrongdoer from repeating the trespass or as compensation to the wounded feelings of the plaintiff.
>
> Punitive, that is, aggravated, damages may be authorized when the circumstances of the wrong are such as to show an entire want of care and an indifference to the consequences.
>
> The measure of such damages is your enlightened conscience as an impartial jury.
>
> Now, ladies and gentlemen, I charge you that the speech and statements complained of by the plaintiff are of a public concern. Therefore, for in order for the plaintiff to be entitled to an award of punitive damages, he must demonstrate that the statements complained of were made with actual malice, as I will define that for you.
>
> Reckless disregard of the truth is equivalent to malice. I charge you that a statement is made with actual malice, as the term is used in this charge, if it is made with knowledge that it is false or with reckless disregard of whether it is false or not.
>
> In order to establish recklessness, the plaintiff must prove that the defendant had a high degree of awareness of the probable falsity of the statements published.
>
> I charge you, ladies and gentlemen, that ill-will, hatred or hostility or even spite do not necessarily constitute actual malice as I had described the term to you.
>
> It is never expected that a publisher will admit his own malice. The circumstances, all of the circumstances must be considered. And from the circumstances, despite the publisher's sworn testimony to the contrary, a jury may properly conclude that the publisher was motivated by malice.

The expenses of litigation are generally not allowed as part of damages, but if the defendant has acted in bad faith or has been stubbornly litigious or has caused the plaintiff unnecessary trouble and expense, you may allow them.

The jury returned a verdict on May 24, 1991, awarding Mills $1.00 in compensatory damages, $1.00 in nominal damages, $26,-920.00 in punitive damages and $26,920.00 in attorney's fees. The Superior Court entered a judgment against Ellerbee that embodied the jury award and a separate order enjoining Ellerbee from making any further false statement against Mills.

The Debtor appealed the judgment and the injunction to the Georgia Supreme Court. The Supreme Court affirmed the judgment, but reversed the injunction as overly broad. *Ellerbee v. Mills*, 262 Ga. 516, 422 S.E.2d 539 (1992), *cert. den.* —— U.S. ——, 113 S.Ct. 1833, 123 L.Ed.2d 460 (1993).

Ellerbee then filed a Chapter 7 petition and scheduled the judgment in favor of Mills as an unsecured claim. Mills responded with this adversary proceeding. In his answer, the Debtor denies that the statements he made concerning the Plaintiff were false or were made with malice.

### JURISDICTION

The court has jurisdiction in this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and 157(b)(2)(I).

### ISSUES

This case presents the following related and overlapping issues:

1. Does a finding by a jury that the Defendant published defamatory statements with "actual malice" preclude litigation concerning whether the debt embodied in the judgment is for a "malicious injury" within the meaning of section 523(a)(6)?

2. May affidavits of jurors be considered in deciding whether to give collateral estoppel effect to a judgment of another court?

3. If collateral estoppel does not bar further litigation of the willful and malicious nature of the injury for which the Plaintiff obtained a judgment for damages and attorney's fees, has the Plaintiff proved by a preponderance of undisputed evidence that the debt for compensatory and punitive damages is for a "willful and malicious injury"? In that connection, must the Plaintiff prove that the Debtor knew that the statements he made were false? Can a reckless disregard for the truth ever result in a willful or malicious injury?

4. Are attorney's fees nondischargeable merely because damages are? Must the Plaintiff show that the Defendant's bad faith or stubborn litigiousness was the infliction of a willful and malicious injury in order to show that the debt for fees is nondischargeable?

### DISCUSSION AND CONCLUSIONS OF LAW

#### I. *Summary Judgment Standard.*

The evidence submitted by Mills included excerpts of Ellerbee's testimony at the trial and the instructions to the jury. He also submitted affidavits of three jurors, who stated that the jury awarded punitive damages and attorney's fees because Ellerbee "acted in bad faith by repeatedly publishing derogatory statements about Plaintiff Mills even though he knew many of the statements were not true." The Debtor submitted no evidence in support of his own motion or in opposition to the motion of the Plaintiff.

Pursuant to Fed.R.Civ.P. 56(c), incorporated in Fed.R.Bankr.P. 7056, a party moving for summary judgment is entitled to prevail if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden to establish that no genuine factual issue exists. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53; *Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th

Cir.1991). The movant must point to the pleadings, discovery responses or supporting affidavits that tend to show the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. The court must construe this evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Rollins v. TechSouth, Inc.,* 833 F.2d 1525 (11th Cir.1987).

Unless the moving party shows that there is no genuine issue of material fact, the opposing party has no burden to show that a genuine issue of material fact exists. *Clark,* 929 F.2d at 608. Where the moving party satisfies its burden, the burden of going forward shifts to the non-moving party, who must then designate "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

The Plaintiff argues that there is no genuine issue as to any material fact, all material facts having already been litigated and determined by the state court.

#### II. *Applicability of Collateral Estoppel.*

##### A. The Applicable Law.

■ The doctrine of collateral estoppel is applicable to dischargeability cases in bankruptcy. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Hoskins v. Yanks (In re Yanks),* 931 F.2d 42 (11th Cir.1991). The U.S. Supreme Court held in *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 381–82, 105 S.Ct. 1327, 1332–33, 84 L.Ed.2d 274 (1985), that in a case involving issues previously considered by a state court, a federal court must give preclusive effect to the state court's findings of fact to the same extent other courts in that state would do so, unless a federal statute creates an exception to the full faith and credit provisions of 28 U.S.C. § 1738. There is no such exception in the Bankruptcy Code. *See St. Laurent v. Ambrose (In re St. Laurent),* 991 F.2d 672, 675–76 (11th Cir.1993); *Sciarrone v. Brownlee (In re Brownlee),* 83 B.R. 836 (Bankr. N.D.Ga.1988).

■ The Eleventh Circuit has sometimes applied the doctrine of collateral estoppel to state court judgments in bankruptcy cases without referring specifically to state law on the doctrine. *See, e.g., Hoskins v. Yanks (In re Yanks), supra* (Florida state court judgment for defamation); *Ikner v. Ikner (In re Ikner)*, 883 F.2d 986 (11th Cir.1989) (Alabama state court judgment for personal injury). The parties here agree that these cases require a showing of four factors to invoke the doctrine:

(1) the issue at stake had to be identical to the one involved in the prior litigation;

(2) the issue must have been actually litigated in the prior litigation;

(3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action; and

(4) the standard of proof in the prior litigation must have been at least as stringent as the standard of proof in the present action.

■ In Georgia, collateral estoppel will preclude further litigation of facts determined in a prior proceeding when these three requirements are met:

(1) the issue determined in the prior proceeding is the same as that in the subsequent proceeding, *Firestone Tire & Rubber Co. v. Pinyan*, 155 Ga.App. 343, 270 S.E.2d 883 (1980);

(2) the issue was actually litigated and determined, *Blakely v. Couch*, 129 Ga. App. 625, 200 S.E.2d 493 (1973); and

(3) the issue was necessary to the adjudication of the prior proceeding, *Blakely v. Couch, supra.*

Thus, the standards argued by the parties and those applicable under Georgia law are, at least on their face, virtually identical.

## B. The Reach of Collateral Estoppel in This Case.

■ To have awarded punitive damages under the instructions given, the jury must have found that Ellerbee defamed Mills with actual malice, as that term was defined by the state court. Mills contends that the issue of malice was therefore actually litigated and

was necessary to the determination reached in the state court. He further contends that the issue of malice is the same in both cases.

Ellerbee argues that the jury may have implied actual malice by finding a reckless disregard of the truth, rather than by finding that he knew the statements were false. He contends that a court may find malice under section 523(a)(6) in a defamation case only if it finds the speaker knew his statements were false. He contends that if the statements were false, he did not act willfully because he was only reckless.

■ A Georgia court would apply the doctrine of collateral estoppel only where the issue previously determined in litigation between the same parties is the same issue in the current case. The issue decided by the state court—that Ellerbee acted with actual malice because at the very least he recklessly disregarded the truth—is not the issue before this court. Because the jury's verdict that Ellerbee acted with "actual malice" does not rule out the possibility that he recklessly disregarded the truth, the finding of "actual malice" does not prove that Ellerbee intended to injure Mills or knew that injury to Mills would necessarily follow from his conduct. The instructions apparently did not permit the jury to consider whether Ellerbee had a "just cause" for his action. Intent to injure and just cause for otherwise wrongful conduct are elements intimately involved in a determination of whether a debt is for a willful and malicious injury, however. The definition of "actual malice" is not the mirror image of the definition of "willful and malicious" in section 523(a)(6). *See* Part III A below. Consequently, collateral estoppel is no bar to further litigation concerning whether the debt is for a willful and malicious injury.

■ The doctrine of collateral estoppel does apply to two factual issues that the Debtor may not now contest: whether he defamed Mills by making false statements about Mills and whether he had a high degree of awareness of the probable falsity of his statements. Affirmative resolution of these issues was implicit in the verdict. They were actually litigated in the state

court and were necessary to the state court's judgment. These issues are identical to issues relevant to the Plaintiff's claim here.

In an effort to sidestep collateral estoppel, Ellerbee argues that this court cannot determine precisely what facts the jury decided in awarding fees. The jury charge on attorney's fees did not define the terms "bad faith" or "stubbornly litigious" or causing "unnecessary trouble and expense," and the jury's verdict did not state which of these acts it found. The doctrine of collateral estoppel, however, plays no part in the analysis of the dischargeability of the attorney's fees.

## C. The Use of Affidavits.

■ Mills asks the court to refer to affidavits of jurors so that he might prove that the jury found actual malice because Ellerbee knew some of his statements were false. O.C.G.A. § 17–9–41 provides that "affidavits of jurors may be taken to sustain but not to impeach their verdict." The affidavits submitted by Mills do not sustain the verdict; indeed, it is not under attack. Rather, they seek to reveal the jurors' thoughts on what the instructions meant or on what facts they found that allegedly support the ultimate finding of actual malice.

Rule 606(b) of the Federal Rules of Evidence bars the testimony of a juror concerning a juror's mental processes during deliberations to attack the validity of a verdict. This rule in no way implies the converse— that a juror's affidavit may always be used to reveal the jury's mental process so long as the inquiry is about something other than the validity of the verdict.

Affidavits of jurors, offered to raise a collateral estoppel argument, are not admissible to explain what they say the jury decided, when the verdict, read with the charge, is silent on the point. Jurors' affidavits may not be used by a plaintiff in a civil suit to "embellish the general jury verdict" for the purpose of invoking the doctrine of collateral estoppel. *Ohio–Sealy Mattress Mfg. Co. v. Kaplan,* 90 F.R.D. 11, (N.D.Ill.1980), *rev. in part on other grounds,* 745 F.2d 441 (7th Cir.1984), *cert. den.* 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985).

## III. *Dischargeability of Debts Under Section 523(a)(6).*

### A. The Definitions of "Willful" and "Malicious".

■ Outside of bankruptcy, the basic policy underlying debtor/creditor law is that legally incurred debt should be paid. A different policy receives the primary emphasis in bankruptcy cases. In most instances, the policy of the fresh start for the honest debtor excuses the debtor from paying his debts, unless a debt is one of the kind described in section 523(a). The most immediate rationale in excluding such a debt from discharge is that the creditor's interest in collecting the debt outweighs the debtor's interest in not having to pay it. *Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991). Another explanation is that it may deter undesired conduct. Thomas H. Jackson, *The Logic and Limits of Bankruptcy Law* 278 n. 53 (1986).

Section 523(a)(6) provides:

A discharge under section 727, 1141, 1128(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

Courts have used the terms "willful" and "malicious" and "willful and malicious" in so many confusing ways in bankruptcy cases that it is sometimes difficult to say what they mean. *See* 2 David G. Epstein, Steve H. Nickles & James J. White, *Bankruptcy* § 7– 30 (1992). Circuit courts of appeal have struggled with their meaning and in particular with the degree to which an intent to harm or the inevitability of harm is a part of one or both words. *Conte v. Gautam (In re Conte),* 33 F.3d 303, 306–07 (3rd Cir.1994); *Goldberg Securities, Inc. v. Scarlata (Matter of Scarlata),* 979 F.2d 521, 536–39 (7th Cir. 1992).

Difficulty with the definitions of these words is not confined to a bankruptcy context. Judge Learned Hand eloquently observed about the word "willful" in *Rex Wine Corp. v. Dunigan,* 224 F.2d 93, 95 (2nd Cir.

1955), "[i]t must be owned that about that adjective there always gathers an unhappy cloud of uncertainty that has caused an abundance of discussion...." Similarly, it has been said of the word "malice" that its meaning "in English law has been a question of much difficulty and controversy." W.F. Craies, Ency. Laws Eng. VIII 77 (1898) quoted in the definition of "malice", *The Compact Edition of the Oxford English Dictionary* (1971).

 The Eleventh Circuit has settled on the following definitions of willful and malicious. "Willful means intentional or deliberate and can not be established merely by applying a recklessness standard." *Lee v. Ikner (In re Ikner)*, 883 F.2d 986, 989 (11th Cir.1989). Malicious means "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." *Sunco Sales, Inc. v. Latch (In re Latch)*, 820 F.2d 1163, 1166 n. 4 (11th Cir.1987).

### 1. *Willful.*

When considering the meaning of section 523(a)(6), a reader focusing solely on the definition of "willful" as intentional might conclude that "willful" refers only to whether the debtor acted of his or her own volition, rather than unconsciously or as a result of an outside force over which the debtor had no control. The question is whether the word "willful" also denotes the debtor's knowledge of the substantial certainty of injury. In *Lee v. Ikner (In re Ikner)*, 883 F.2d 986, 991 (11th Cir.1989), the court of appeals held,

> The standard of 'willful and malicious injury' under the discharge provision requires, as we have noted, a showing of an intentional and deliberate act, which is not done merely in reckless disregard of the rights of another....
>
> The bankruptcy court applied the proper standard of willfulness. Furthermore, in finding that the appellants did not prove *by inference or innuendo* that Ikner intended to cause the accident or resulting injury, the court applied the correct standard of maliciousness, i.e., either special malice or implied or constructive malice. (Emphasis in original.)

Thus, the court squarely held that the malicious prong of the phrase contains an element of intent to injure.

Yet, the *Ikner* court also said that an intentional act that falls within the meaning of "willful" in section 523(a)(6) must not be one "done merely in reckless disregard of the rights of another." Recklessness implies indifference to the consequences, which in turn presumes that the actor knows or is charged with knowing the possible consequences to which he is indifferent. Thus, a debtor who knows of danger but continues to act indifferently to the increased possibility of injury is reckless. Being indifferent to another's rights while performing an act does not affect whether the act itself is intentional. It follows that intentional or deliberate acts not done in the reckless disregard of the rights of others are acts as to which the debtor desired injury or knew that injury was substantially certain to occur. Thus, identifying acts that resulted in a willful injury involves a similar, but not the same, kind of analysis that courts apply in finding implied malice, an implied intent to harm.

If intent to act is all that matters, then it would be necessary to show only that the Defendant meant to publish. If intent to act in the face of danger is what is required to show a "willful" injury, Mills showed that Ellerbee knew his words tended to harm Mills' reputation and also knew that there was a high probability the statements were false. Hence, in the broad sense of an intentional act, even Ellerbee cannot deny that he acted willfully.

 The word "willful" modifies the word "injury." Other courts and commentators have opined that the focus should be on the narrower question of whether the injury was a function of the debtor's will. *See, e.g., Bailey v. Chatham (Matter of Bailey)*, 171 B.R. 703 (Bankr.N.D.Ga.1994). This interpretation is one that finds support in cases decided decades ago. *See, e.g., In re Wernecke*, 1 F.Supp. 127 (W.D.N.Y.1932). Referring to section 17(a)(8) of the Bankruptcy Act, Collier stated that "[t]he word 'willful' means nothing more than an act which necessarily leads to injury." 1A *Collier on Bankruptcy* ¶ 17.17 (14th ed.1978). *Collier* gives

the word the same meaning in section 523(a)(6). 3 *Collier on Bankruptcy* ¶ 523–16 (15th ed.1994). Hence, a willful injury for purposes of section 523(a)(6) is an injury that the debtor intended to cause or that the debtor knew was substantially certain to be the consequence of his acts.

## 2. *Malicious.*

In *Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257 (11th Cir.1988), the court of appeals expanded its definition of "malicious" by holding that a finding of implied or constructive malice will satisfy the malicious element. The court discussed the lines of cases that have attempted to define "willful" and "malicious" in section 523(a)(6), beginning with the U.S. Supreme Court's decision in *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904). *Tinker* spawned two lines of cases, one holding that a reckless disregard of a duty satisfied the willful element and the other applying the reckless disregard standard to the element of maliciousness. Reports of the House and Senate on the Bankruptcy Reform Act of 1978 stated that " 'willful' means intentional or deliberate" and that section 523(a)(6) overruled *Tinker* insofar as it and cases that followed it permitted the use of the so-called reckless disregard standard. S.Rep. No. 95–989, 95th Cong.2d Sess. 79 (1978); H.Rep. No. 95–595, 95th Cong., 1st Sess. 365 (1977) U.S. Code Cong. & Admin. News 1978 at pp. 5864, 5865, 6320, 6321. The *Rebhan* decision traces the ensuing debate about which interpretation of *Tinker* had been overruled. *Rebhan* appears to have ended the debate in the Eleventh Circuit. The court of appeals concluded that the disavowal of the reckless disregard standard was directed to the element of willfulness, but not to the element of malice.

In *Hoskins v. Yanks (In re Yanks),* 931 F.2d 42 (11th Cir.1991), the court of appeals considered the concept of implied malice and the application of collateral estoppel to a state court judgment in a defamation case. The complaint in the state court alleged the publication was made " 'maliciously and with the intention of harming Mr. Hoskins' " or alternatively " 'was made without malice, but did state that the [Mr. Hoskins] had commit-

ted a criminal act, and therefore malice and damages are deemed to exist as a matter of law.' " *Hoskins v. Yanks (In re Yanks),* 95 B.R. 234, 235 (Bankr.S.D.Fla.1989). The jury awarded the plaintiff no compensatory damages but did award $20,000 in punitive damages. Because the basis for awarding damages was not clear, the bankruptcy court refused to apply the doctrine of collateral estoppel. Using language quite similar to that in the jury charge under consideration here, it held:

> [t]he state court verdict does not make a finding of "willful and malicious" conduct on the part of the debtor, therefore, the state court judgment may have been based on a finding of *reckless disregard for the truth.* Reckless acts are insufficient to satisfy the test under 11 U.S.C. § 523(a)(6).

*Yanks,* 95 B.R. at 236. (Emphasis added.)

On appeal, the district court affirmed, but the Eleventh Circuit reversed. It held that "[t]he collateral effect of the judgment is not affected by the fact that the jury could have premised its award on either theory because 'malice for purposes of section 523(a)(6) can be established by a finding of implied or constructive malice.' " *Yanks,* 931 F.2d at 43, *citing Rebhan.*

Nonetheless, implied malice is a slippery concept in section 523(a)(6) cases and particularly in cases involving defamation. In *Lee v. Ikner (In re Ikner),* 883 F.2d 986 (11th Cir.1989), Judge Tuttle used language that signals a need for caution in dealing with the concept of "implied malice" in section 526(a)(6) cases. After pointing out that it is not necessary to show "special malice," in the sense of an actual intent to injure, to prove malice, he said, "constructive or implied malice can be found if the nature of the act itself implies a sufficient degree of malice." *Ikner,* 883 F.2d at 991. To the extent the word "willful" is limited to the deliberate commission of the act, as opposed to a determination that the debtor either intended injury or knew that injury was substantially certain to result, implying "malice" runs the risk of implying an intent to injure based *solely* on reckless conduct. Such a result would render the words "a showing of an intentional

and deliberate act, which is not done merely in the reckless disregard of the rights of others," *Ikner*, 883 F.2d at 991, meaningless.

## B. The Problem of Malice in a Defamation Case.

This case is about defamation. In Georgia, libel is defined as "a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." O.C.G.A. § 51–5–1. Slander or "oral defamation" is defined as:

(1) Imputing to another a crime punishable by law;

(2) Charging a person with having some contagious disorder or with being guilty of some debasing act which may exclude him from society;

(3) Making charges against another in reference to his trade, office, or profession, calculated to injure him therein; or

(4) Uttering any disparaging words productive of special damage which flows naturally therefrom.

O.C.G.A. § 51–5–4.

O.C.G.A. § 51–5–5 provides in part that "[i]n all actions for printed or spoken defamation, malice is inferred from the character of the charge. However, the existence of malice may be rebutted by proof." Thus, the statutes use both the word "malicious" and the word "malice" but do not define those words.

"The word 'malice' ... has plagued the law of defamation from the beginning." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 115, at 833–34 (5th ed.1984). Georgia's law on the subject is no exception. In *Straw v. Chase Revel, Inc.*, 813 F.2d 356 (11th Cir.1987), *cert. denied sub nom., Chase Revel, Inc. v. Straw*, 484 U.S. 856, 108 S.Ct. 164, 98 L.Ed.2d 118 (1989), the court of appeals reversed a judgment for punitive damages in favor of a private figure plaintiff in a libel action because of an erroneous charge concerning the basis for awarding those punitive damages. The error that the court found in the charge was that "a reading of the instructions in their entirety indicates

the jury could have found that Revel acted with common law malice *or* actual malice in publishing disparaging comments about Mr. Straw." *Straw*, 813 F.2d at 363. The court explained:

... Confusion often enters the defamation arena because the word "malice" has two distinct meanings. In order to prevail in a suit for liable, Georgia law requires that the plaintiff show the statement was false *and* "malicious." O.C.G.A. § 51–5–1. In this context, "malice" means ill will, and "malicious" denotes statements deliberately calculated to injure. Georgia courts refer to this as "common law malice," and distinguishes it from actual or "constitutional" malice. *See Williams v. Trust Co. of Georgia*, 140 Ga.App. 49, 56, 230 S.E.2d 45 (1976). As noted above, the latter term deals only with the speaker's knowledge of the truth or falsity of the allegedly defamatory statements.

*Straw*, 813 F.2d at 362.

█ If "'malicious' denotes statements deliberately calculated to injure," it would seem to be inconsistent to hold that negligent or reckless conduct could support a libel verdict. Yet, a person may negligently commit the tort of defamation. *Triangle Publications, Inc. v. Chumley*, 253 Ga. 179, 317 S.E.2d 534 (1984). The Court of Appeals explained this anomaly as follows:

It does seem incongruous common law to state that a defamation action may be based on common law malice and negligence. "Malicious," meaning full of malice, connotes an act of intentional hostility which seems to contradict the possibility of negligence. To avoid confusion, one must remember that malice and negligence support different essential elements of the tort. A statement may be brutally malicious but will not support an action of defamation unless it is also false. Negligence measures only the defendant's degree of care in verifying the truthfulness of the statement.

*Straw*, 813 F.2d at 363 n. 8. Thus, the court distinguished "malice" from "malicious" but then defined "malicious" a second time as meaning "full of malice."

 It is from the stew of conflicting and confusing uses of the words "willful" and "malicious" that this case must be decided. A finding of malice in connection with defamation may or may not include conduct that would be considered malicious in the context of section 523(a)(6). A "willful and malicious injury" under section 523(a)(6) need not be the product of spite or ill will, *Sunco Sales, Inc. v. Latch (In re Latch),* 820 F.2d 1163, 1166 n. 4 (11th Cir.1987), even though in defamation at least, "malice" means "ill will" and "malicious" means "full of malice." Yet, "malice" carries with it, if not an overtone of evil, at least the idea that the conduct of the debtor was repugnant. The Latin root "mal" means "bad." But, the primary problem of section 523(a)(6) is not just: how bad? It is: what did the debtor know about the likelihood of injury and what degree of conscious control did the debtor have over the events leading to injury?

### C. Analysis of "Willful ... Injury".

 The jury made no specific finding concerning the willful nature of Ellerbee's conduct. He denies the statements that he made were false and that he knew they were false. The jury verdict fails to establish that he knew they were false. Because the jury could have found that Ellerbee acted in reckless disregard of the truth, does that mean, as Ellerbee contends, his actions, if reckless, were not willful? Or, as Ellerbee also contends, must Mills prove that Ellerbee knew the statements were false in order to establish a section 523(a)(6) case?

Ellerbee contends that the fiction of implied malice overlooks the legislative history that a "reckless disregard" standard should not be the basis for denying a discharge under section 523(a)(6). He relies on *Wheeler v. Laudani,* 783 F.2d 610 (6th Cir.1986), which in turn accepts the holding of *Matter of Kasler,* 611 F.2d 308 (9th Cir.1979). In both cases, the courts concluded that a statement is not made "willfully" if the speaker recklessly disregards the truth but does not know the statement is false.

The juxtaposition of "willful" and "reckless" permits the easy assumption that what is reckless cannot be willful. That analysis, however, fails to take into account the words modified by these terms or the ideas which the phrases as a whole are meant to convey. Ironically, as demonstrated below, in the case of the tort of defamation, an injury may be willful even though the speaker's attitude toward the truth is merely reckless.

Mills has shown an absence of any genuine issue of material fact regarding the element of willfulness. There is no dispute that Ellerbee acted willfully in the broadest sense of the word. The letters were not mailed by mistake or thorough inadvertence. The signs did not erect themselves. In his answers to the complaint and in his testimony at trial, Ellerbee admitted that he intentionally published the statements about the Plaintiff.

There is likewise no disputed material fact concerning the object of Ellerbee's will—the infliction of injury on Mills. The statements impugned Mills' integrity and exposed him to ridicule and disrepute. Ellerbee's purpose was to have Mills removed as a principal. Removal would have harmed Mills. Ellerbee admitted that part of his motivation in publishing the statements was to strike back at Mills. He admitted that the statements made tended to injure Mills' reputation. He willed injury upon Mills and he did so because, he says, the statements were true. *If* they were *true,* no doubt Mills would have been injured.

Ellerbee understood that his statements were likely to be false, however. Mills' legal counsel warned him to stop making them and had been asked to retract his allegations, but Ellerbee continued to publish statements about Mills. He does not and cannot deny that *if* they were *false,* injury to Mills followed necessarily from his persistent repetition of false statements.

Whether the statements were true or false, Ellerbee knew that their publication would necessarily lead to injury. Reckless though he may have been about the truth, he was deliberate about causing injury. Therefore, because he acted intentionally to inflict harm on Mills, Ellerbee acted willfully for purposes of section 523(a)(6). The Debtor offered no evidence to the contrary.

## D. Analysis of "Malicious Injury".

■ Application of the "implied malice" standard of *Hoskins v. Yanks (In re Yanks)*, 931 F.2d 42 (11th Cir.1991) would have disposed of this case in fewer words, but to have done so might have left the impression that this case involved only a "technical" application of section 523(a)(6), one that gave continuing life to a debt that somehow arose from a superficially intentional, yet reckless but impliedly malicious act and not for a truly willful and malicious injury.

Just as the injury inflicted by Ellerbee was a willful one, it was also malicious, not because the court implies malice, but because the Plaintiff proved the classic elements of a malicious injury under section 523(a)(6): the commission of wrongful acts without just cause. Ellerbee committed a series of wrongful acts by defaming Mills. If Ellerbee can state no just cause for these acts, the injury he inflicted would be a malicious one under section 523(a)(6). The only excuses he offered for his conduct were that he spoke truthfully and that if the statements were false, he was merely reckless. Neither one of these contentions provides Ellerbee with a just cause or excuse for his wrongful acts of defamation.

In the first place, he is collaterally estopped from relitigating the issue of whether his statements were false. That leaves the question of his reckless conduct. Ellerbee could not hide behind a veil of recklessness to avoid liability for punitive damages for defamation. The question is whether he should be permitted to do so under section 523(a)(6).

Ellerbee refuses to give an inch on his position that his statements were true, and hence he fails to articulate fully what his defense involving recklessness suggests, which is that he honestly believed his statements to be true and that if he had known the statements were false, he would not have made them. The implication of his position appears to be that he lacked the requisite degree of some malevolent frame of mind to satisfy section 523(a)(6)'s requirements.

■ Not every reckless disregard for the truth is a willful and malicious act for section 523(a)(6) purposes. In Ellerbee's case, however, his lack of regard for the truth is not an excuse for his behavior. Indeed, it is the reason he has no excuse. In implying, if that is what he is doing, that he would not have published had he known his statements were false, Ellerbee misses the point. It is not what he would have done had he known the facts that matters. It is what he did with the facts that he knew that determines his liability.

Ellerbee knew he was recklessly disregarding the truth! He made a conscious and deliberate decision either (1) not to be informed and not to investigate or (2) to publish regardless of the truth of the statements because he found it impossible to check the facts. Though *Rex Wine Corp. v. Dunigan*, 224 F.2d 93 (2nd Cir.1955) was not a dischargeability case, it was about the nature of willfulness, which is at the heart of Ellerbee's defense. There, Judge Hand said, " . . . a deliberate determination not to take the care that the delinquent knows to be necessary is an attitude of the will as affirmative as a deliberate refusal to perform." *Rex Wine Corp.*, 224 F.2d at 95.

The Plaintiff has no burden to prove that Ellerbee would have published the statements even if he had known they were false or that Ellerbee knew that they were not true. His burden is only to make a prima facie showing that there is no just cause for the wrongful acts. He met that burden. Mills showed that Ellerbee repeatedly defamed him by making statements as to which Ellerbee had a high degree of awareness of their probable falsity. He showed that Ellerbee refused to stop making the statements even after being warned that the statements were defamatory and when he knew that the statements tended to injure Mills' reputation. Ellerbee's position as a former teacher gave rise to no duty to publish in the manner that he did, and the allegations were not made in situations in which others were subjected to irreparable harm. Mills showed that Ellerbee was aware of his failure to investigate his allegations, had time to conduct an investigation but did not.

Ellerbee does not dispute these facts. Instead, he says he was merely reckless, as if

with greater knowledge, he would have been silent. Yet, he had all the knowledge any reasonable person would need to weigh the risk of causing injury. Having knowledge of the high probability that his statements were false and of his own failure to investigate, he nonetheless acted deliberately to cause injury and states no just excuse by pleading ignorance that his statements were false.

For these reasons, the debt for damages embodied in the judgment is for a willful and malicious injury. Ellerbee's interest in not paying for the resulting injury he desired cannot possibly outweigh the interest of Mills to collect the debt as recompense for injury that Mills had no means to prevent and as a deterrent to similar conduct in the future.

The Debtor cites two decisions of bankruptcy courts in the Eleventh Circuit rendered after *Yanks* for the proposition that a state court judgment based on a reckless disregard of a duty is not entitled to collateral estoppel effect in a section 523(a)(6) case. *MRB, Inc. v. Marshall (In re Marshall)*, 144 B.R. 930 (Bankr.M.D.Fla.1992) and *HSSM # 7 Limited Partnership v. Bilzerian (In re Bilzerian)*, 162 B.R. 583 (Bankr.M.D.Fla. 1993). These cases are inapposite to the issue here because this case does not turn on the application of collateral estoppel. Moreover, these cases make the point that a reckless disregard of a duty does not prove that a debtor acted willfully, but they do not stand for the proposition that a debtor who intended injury and succeeded in causing it gets off the hook merely because some element of his conduct was reckless.

### IV. *Dischargeability of Attorney's Fees Under Section 523(a)(6).*

In addition to challenging the dischargeability of Ellerbee's debt for compensatory and punitive damages, Mills contends that the debt for attorney's fees embodied in the judgment is also not dischargeable. He reasons that "the nature of the conduct which gave rise to the injury" should bar discharge of the fees. Ellerbee points out that the jury may have determined either that he acted in bad faith or that he was stubbornly litigious or that he caused unnecessary trouble and expense and that it is impossible to tell from the record what facts the jury found. He concludes from this observation that there is no way to determine whether the award was for a willful and malicious injury.

The debt for attorney's fees is not dischargeable for a reason that the Plaintiff hinted at but did not articulate in his memoranda in support of his motion. Though attorney's fees are normally not considered "damages," they are under the Georgia statute that the state court applied. Moreover, they are damages, not for bad faith or stubborn litigiousness, but for the underlying tort, which, as shown above in Part III, involved a willful and malicious injury.

### A. Federal Case Law.

Courts have based determinations of whether awards of attorney's fees are dischargeable or nondischargeable on at least three different grounds. One line of cases, with support in the Second, Seventh and Eighth Circuits, holds that an award of attorney's fees that is "ancillary" to the "primary debt" is not dischargeable if the primary debt is not dischargeable. *Klingman v. Levinson*, 831 F.2d 1292, 1296 (7th Cir.1987); *Jennen v. Hunter (In re Hunter)*, 771 F.2d 1126, 1131 (8th Cir.1985); *Pauley v. Spong (In re Spong)*, 661 F.2d 6 (2nd Cir.1981). "Ancillary obligations" have been said to "partake of the character of the underlying debt." *Florida v. Ticor Title Ins. Co. of Calif. (In re Florida)*, 164 B.R. 636, 639 (9th Cir. BAP 1994).

That approach has its critics, however. *See, e.g., Lupin v. Ziegler (In re Ziegler)*, 109 B.R. 172 (Bankr.W.D.N.C.1989). The absence of a complementary provision to section 523(d), permitting successful debtors to recover fees in section 523 cases under some circumstances, has led some courts to conclude that an award of attorney's fees to a successful creditor is dischargeable, unless state law independently authorizes the creditor to recover fees. This is the logic adopted by the Sixth Circuit in *Martin v. Bank of Germantown (In re Martin)*, 761 F.2d 1163 (6th Cir.1985), in which the court decided that a judgment for attorney's fees was not dischargeable only if state law permitted attorney's fees to be recovered as part of a contractual obligation determined to be non-

dischargeable. *See also, TranSouth Financial Corp. of Fla. v. Johnson,* 931 F.2d 1505 (11th Cir.1991).

Following the same reasoning, courts have decided that fees may be nondischargeable, even in the absence of a contract to pay them, if a statute authorized the trial court to impose them. *See, e.g., Tricentrol Overseas, Ltd. v. Touchstone (Matter of Touchstone),* 149 B.R. 721 (Bankr.S.D.Fla.1993). In that case, the claims at issue arose from willful and malicious conversion and defalcation by the debtor in his capacity as a trustee with respect to seats on a stock exchange. The bankruptcy court ruled that the state court's awards of compensatory and punitive damages were not dischargeable. But, the court refused to hold that an award of attorney's fees to obtain a declaratory judgment concerning the ownership of the seats was not dischargeable. Although Texas law permitted recovery of attorney's fees in declaratory judgment actions, it did not provide for fees for the recovery of the tort claims.

Many of the cases cited above lend strong support to the Plaintiff's claim that the debt for attorney's fees is not dischargeable. Yet, the explanations that attorney's fees are "ancillary" to nondischargeable debts or carry the same quality of nondischargeability beg the question whether the debt for fees is itself a debt for a willful and malicious injury. And, there is no contract here that supplies a basis for relief to the Plaintiff. Ellerbee defends on the ground that the jury might have decided that he was stubbornly litigious but that such a finding does not prove that he acted willfully and maliciously insofar as fees are concerned. In that connection, although he does not mention it, the fact is that Ellerbee was successful in resisting the broad scope of injunctive relief, resistance that may have caused Mills to incur some of the fees for which he obtained a judgment. Why, then, should the fees be nondischargeable, at least without a trial? The answer lies in how Georgia law treats attorney's fees under O.C.G.A. § 13–6–11.

## B. Attorney's Fees as Damages for the Underlying Tort.

█ Under the common law, litigants bear their own attorney's fees. This is the general rule in Georgia. Nonetheless, parties to a transaction may agree to a different allocation of litigation expenses, *e.g.,* O.C.G.A. § 13–1–11, and in limited situations statutes permit the winning party to recover attorney's fees from the losing party in the absence of a contract. *E.g.,* O.C.G.A. §§ 9–15–14 and 51–7–83.

The basis on which Mills was permitted to recover attorney's fees from Ellerbee is contained in O.C.G.A. § 13–6–11, which states:

> The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

The state court did not refer specifically to O.C.G.A. § 13–6–11 in the instructions to the jury, but the charge closely tracked the statute:

> The expenses of litigation are generally not allowed as part of damages, but if the defendant has acted in bad faith or has been stubbornly litigious or has caused the plaintiff unnecessary trouble and expense, you may allow them.

Because the state court did not define the terms used in the charge, it is impossible to know for certain what facts concerning Ellerbee's acts the jury found to support its conclusion that he had either acted in bad faith or had been stubbornly litigious or had caused unnecessary trouble and expense.

Ellerbee argues that this impossibility means that the court cannot determine whether or not the debt for attorney's fees was for a willful and malicious injury. In *Fincher v. Holt (Matter of Holt),* 173 B.R. 806 (Bankr.M.D.Ga.1994), the court came to a similar, if not the same, conclusion that findings of "bad faith" or "unnecessary trouble or expense" are not surrogates for underlying facts that would establish a "willful and malicious injury." Having found that the defendant had acted in bad faith in entering into a construction contract and had caused the plaintiffs unnecessary trouble and expense, the state court awarded attorney's

fees pursuant to O.C.G.A. § 13–6–11. The bankruptcy court applied collateral estoppel and excluded from the debtor's discharge an award of damages, but it held that "[s]ince the specific finding by the state court does not rise to the level of willful and malicious conduct, the $6,000 award of attorney's fees is dischargeable in bankruptcy." *Holt*, 173 B.R. at 818.

Thus, the *Holt* court asked whether the bad faith or stubborn litigiousness of the defendant constituted willful and malicious conduct. The answer the court in *Holt* gave to its question may have been correct as applied to the facts in that case or even as a general proposition, but this court does not believe it is the relevant question. To ask the right question, it is necessary to focus on the purpose of the award of attorney's fees.

 Conduct that might be described as stubborn litigiousness or even bad faith might not be willful and malicious conduct. But, the purpose of O.C.G.A. § 13–6–11 is not to reimburse a plaintiff for the attorney's fees a plaintiff incurs because of the defendant's bad faith or stubborn litigiousness. The elements of O.C.G.A. § 13–6–11 are merely triggers that permit the recovery of attorney's fees as separate, special damages flowing from the underlying tort. "Section 13–6–11 does not create an independent cause of action. [It] ... merely establishes the circumstances in which a plaintiff may recover the expenses of litigation as an additional element of damages." *Brown v. Baker*, 197 Ga.App. 466, 467, 398 S.E.2d 797 (1990). Because a court may award expenses of litigation under O.C.G.A. § 13–6–11 to a party only if it permits the party to recover other damages, *Connell v. Houser*, 189 Ga. App. 158, 375 S.E.2d 136 (1988), it is plain that these special damages flow from the underlying tort and not from the conduct described in the O.C.G.A. § 13–6–11.

The cases applying O.C.G.A. § 13–6–11 consistently view attorney's fees as a separate category of special damages for the underlying tort. The Georgia Court of Appeals has distinguished between awards of attorney's fees based on "bad faith" and those for "stubborn litigiousness" or for causing "unnecessary trouble and expense," but in all of the cases the rationale is that the defendant inflicted additional and needless costs or damage on the plaintiff that can said to have been the consequence of the underlying tort.

Bad faith relates to the conduct that gave rise to the litigation and is part of the claim itself. *Windermere, Ltd. v. Bettes*, 211 Ga. App. 177, 438 S.E.2d 406 (1993). An intentional tort carries with it an element of bad faith, and litigation expenses are typically recovered in such cases. *Ponce de Leon Condominiums v. DiGirolamo*, 238 Ga. 188, 232 S.E.2d 62 (1977). But the absence of an intentional tort is not fatal to a claim for litigation expenses for a defendant's bad faith conduct. *Windermere, Ltd.*, 211 Ga.App. 177, 438 S.E.2d 406.

The cases dealing with bad faith rarely define the term. In *Smith v. Maples*, 114 Ga.App. 529, 530, 151 S.E.2d 815, 815–816, the court stated:

In an action upon contract seeking damages for the breach of a contract and attorney's fees under Code § 20–1404 (the predecessor to O.C.G.A. § 13–6–11) as an expense of litigation because of bad faith, the trial judge charged the jury that 'the term 'bad faith' has a meaning which is the opposite of good faith. It means bad purpose, bad intent, bad state of knowledge or desire.' There is no error in the charge.

In a tort action in which punitive damages are awarded, the same evidence that authorized the recovery of punitive damages may also suffice for a finding that the defendant acted in bad faith. *Ford Motor Co. v. Stubblefield*, 171 Ga.App. 331, 319 S.E.2d 470 (1984). Thus, bad faith connotes egregious conduct that aggravated the underlying tort and that shows there was no real excuse for the tort or defense to the claim. Under those circumstances, having to incur fees to collect the other damages is itself an injury flowing from the tort.

Cases holding that the existence of a bona fide dispute is a defense to a claim for litigation expenses based on stubborn litigiousness or unnecessary trouble and expense reflect the same reasoning, *Tower Fin. Service, Inc. v. Smith*, 204 Ga.App. 910, 922, 423 S.E.2d

257 (1992), as do cases in which a large disparity between the demand in the complaint and the verdict contradicts an award of litigation expenses premised on stubborn litigiousness or unnecessary trouble and expense. *Crocker v. Stevens,* 210 Ga.App. 231, 435 S.E.2d 690 (1993), *cert. denied sub nom., Conyers Community Church, Inc. v. Stevens,* —— U.S. ——, 114 S.Ct. 1613, 128 L.Ed.2d 340 (1994). On the other hand, if no bona fide or justiciable controversy or dispute exists, a defendant may be stubbornly litigious or cause unnecessary trouble and expense if it affirmatively resists the plaintiff's claim. *General Refractories Co. v. Rogers,* 240 Ga. 228, 239 S.E.2d 795 (1977). The teaching of these cases is that if there is no real dispute, efforts by a defendant to postpone the inevitable day of reckoning and thereby driving up the plaintiff's costs unnecessarily are a continuing, albeit somewhat indirect, damage flowing from the underlying tort.

The debt for attorney's fees is nondischargeable because under Georgia law, it constitutes additional, special damages for the willful and malicious injury inflicted by Ellerbee on Mills.

### C. *Causation.*

Whether attorney's fees are viewed as ancillary obligations partaking of the nature of the underlying liability or as a contractual debt in the appropriate case or as statutorily imposed damages flowing from the underlying liability, there is one issue not addressed in most of the cases dealing with the dischargeability of attorney's fees that deserves comment. That is the issue of causation.

If a bankruptcy court decides that a fee award is not dischargeable *solely* because the fees were "ancillary" to a nondischargeable debt, it may be assuming facts not in evidence, namely that the plaintiff had no choice but to incur the fees in order to gain satisfaction for the injury.

Under an approach that looks only to what a contract provides or only to the "ancillary" nature of the fees, the rule would be that a defendant always defends a case involving a willful and malicious injury at his or her peril insofar as attorney's fees are concerned, regardless of the plaintiff's con-

duct or the nature of the defense. To be sure, a plaintiff would not incur fees but for the underlying tort. But in most, if not all cases, the fees are incurred after the conduct that gave rise to the tort claim. If all fees incurred by a plaintiff are always recoverable, a plaintiff, particularly one having few budgetary constraints, may incur more fees than are reasonably necessary to get a judgment. A debt for attorney's fees has no special status under section 523. Hence, the plaintiff ought to have to prove that the debt for fees was proximately caused by the defendant's conduct that otherwise gave rise to a willful and malicious injury, however egregious a defendant's conduct might have been. *Compare, Collins v. Palm Beach Savings & Loan v. Collins (In re Collins),* 946 F.2d 815 (1991).

Here, Ellerbee has raised no issue concerning the proximate cause of the damage Mills suffered when he incurred attorney's fees to prosecute the claims against Ellerbee. Ellerbee's refusal to stop publishing defamatory statements after having been warned to do so by Mills' attorney establishes that Mills had no choice but to sue and to incur attorney's fees.

For these reasons, it is hereby

ORDERED that the Plaintiff's motion for summary judgment is GRANTED and the Defendant's motion for Summary Judgment is DENIED. The entire debt embodied in the judgment of the Superior Court of Cobb County, Georgia in favor of the Plaintiff is for a willful and malicious injury and is not dischargeable. The court will enter a separate judgment.